T.C. Memo. 2011-279

UNITED STATES TAX COURT

CITY WIDE TRANSIT, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 406-09L.                   Filed November 23, 2011.

<u>Gary D. Hoppe</u> and <u>Herbert C. Kantor</u>, for petitioner.

<u>Marc L. Caine</u>, for respondent.

MEMORANDUM OPINION

VASQUEZ, <u>Judge</u>:  Pursuant to section 6330(d)(1),[1] petitioner
seeks review of respondent's determination to proceed with a
proposed levy to collect its outstanding employment tax

_____

    [1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code (Code), and all Rule references are to
the Tax Court Rules of Practice and Procedure.

liabilities for the taxable periods ending June 30, 1997; December 31, 1998; March 31, June 30, and December 31, 1999; and March 31 and June 30, 2000 (collectively, the periods at issue). The issue is whether the statute of limitations barred the assessments of petitioner's additional employment taxes for the periods at issue.

## Background

The parties submitted this case fully stipulated under Rule 122. The stipulations of facts and the attached exhibits are incorporated herein by this reference. Petitioner's principal place of business was in New York at the time the petition was filed.

Petitioner transports handicapped children throughout New York City on school buses operating under a contract with the New York City Office of Pupil Transportation. Ray Fouche (Ms. Fouche) is petitioner's president and sole shareholder.

Ms. Fouche hired Brand's Paycheck, Inc. (the payroll company), to prepare petitioner's Forms 941, Employer's Quarterly Federal Tax Return,[2] for all relevant periods.

---

[2] Employers are liable for deducting and withholding from their employees' salaries or wages the employees' shares of Federal income and Federal Insurance Contributions Act (FICA) taxes. Secs. 3102(a), 3402(a), 3403. The withheld Federal income and FICA taxes are reported quarterly on Form 941. Secs. 31.6011(a)-1(a)(1), 31.6011(a)-4(a)(1), Employment Tax Regs.

During the relevant periods employers also reported on Form
(continued...)

In 1998 or 1999 Ms. Fouche, on behalf of petitioner, retained Manzoor Beg (Mr. Beg), an accountant,[3] for the sole purpose of negotiating with respondent a reduction in petitioner's outstanding employment tax liabilities for periods unrelated to those at issue.[4]  As requested by Mr. Beg, Ms. Fouche signed a blank power of attorney form and gave it to him.[5]  Ms. Fouche never requested that Mr. Beg prepare any of petitioner's Forms 941.

Mr. Beg's "False Quarterly Return Scheme"

A.    Forms 941 for the Original Covered Periods

The payroll company prepared petitioner's returns for the periods ending March 31, June 30, and December 31, 1999; and March 31 and June 30, 2000 (original covered periods), and

---

[2](...continued)
941 advance earned income credit (EIC) payments made to employees.  Eligible individuals could elect to receive part of the EIC in their regular pay by filing with their employers Form W-5, Earned Income Credit Advance Payment Certificate.  Employers reduced their employment tax owed by the amount of advance EIC payments made to employees.  See sec. 3507.

[3]  Mr. Beg was not a certified public accountant, although he told Ms. Fouche that he was.

[4]  In addition to petitioner, Ms. Fouche owned a number of other bus companies that had outstanding employment tax liabilities for periods unrelated to those at issue.  Ms. Fouche hired Mr. Beg to negotiate with the Internal Revenue Service (IRS) a reduction in the unrelated outstanding employment tax liabilities of all the companies.

[5]  The power of attorney form is not part of the record, but we assume it was a Form 2848, Power of Attorney and Declaration of Representative.

delivered them to Ms. Fouche. Ms. Fouche signed the returns on petitioner's behalf. The returns the payroll company prepared did not claim advance earned income credit (EIC) payments made to employees, and the parties agree that the returns prepared by the payroll company and signed by Ms. Fouche were not false or fraudulent.

As part of Mr. Beg's scheme he convinced Ms. Fouche that he had reached an agreement with the IRS that would allow her to pay off petitioner's unrelated employment tax liabilities, and as a result he needed to deliver petitioner's returns, as they came due, and certified checks made out to the IRS to the revenue officer with whom he was negotiating. As requested Ms. Fouche gave Mr. Beg the returns for the original periods that the payroll company had prepared and she had signed, as well as certified checks made out to the IRS in the amounts of petitioner's employment tax liabilities determined by the payroll company, so that he could deliver them to the revenue officer.

Mr. Beg never gave the revenue officer the checks Ms. Fouche had made out to the IRS or the Forms 941 for the original covered periods that the payroll company had prepared and Ms. Fouche had signed. Instead, Mr. Beg altered the checks Ms. Fouche had made payable to the IRS by changing the payee to Himalayan Hanoi Craft, the name on a bank account Mr. Beg held at Habib American

Bank (Himalayan account),[6] and cashed or deposited the checks for his own use. Then, to cover up his embezzlement, Mr. Beg prepared, signed, and filed different Forms 941 for the original covered periods on which he falsely claimed that petitioner had made advance EIC payments to employees.[7] The claimed advance EIC payments made to employees reduced petitioner's employment tax liability for each period, and Mr. Beg paid the IRS the reduced amounts using checks from his Himalayan account.[8] During the

---

[6] Ms. Fouche had no knowledge of Mr. Beg's Himalayan account.

[7] Mr. Beg claimed false advance EIC payments made to employees on petitioner's Forms 941 for the original covered periods in the following amounts: $40,539 for the period ending Mar. 31, 1999 (received by the IRS on Apr. 30, 1999); $45,388 for the period ending June 30, 1999 (received on Dec. 21, 1999); $85,927 for the period ending Dec. 31, 1999 (received on Jan. 31, 2000); $53,082 for the period ending Mar. 31, 2000 (received on May 19, 2000); and $55,656 for the period ending June 30, 2000 (received on Aug. 28, 2000).

[8] For example, petitioner's Form 941 for the period ending Mar. 31, 1999, as prepared by the payroll company, reported that petitioner owed $46,501.33 in employment tax for that quarter. Petitioner issued the IRS a certified check for that amount and gave the Form 941 and check to Mr. Beg. The return that Mr. Beg prepared and filed for the period ending Mar. 31, 1999, reported that petitioner had made advance EIC payments of $40,539 during the quarter and showed a total balance due of $5,962.33 (i.e., petitioner's correct tax liability of $46,501.33 – Mr. Beg's falsely claimed advance EIC payments of $40,539). Mr. Beg issued a check to the IRS for $5,962.33 and altered the certified check petitioner had given him by changing the payee from the IRS to Himalayan Hanoi Craft. The results are similar for the other original covered periods, although the account transcripts for those periods do not show that Mr. Beg paid the IRS the exact amount of the remaining reduced liability, as he did for the period ending Mar. 31, 1999.

course of his scheme Mr. Beg converted more than $280,000 of petitioner's intended payments to the IRS into his own funds by altering the checks petitioner had made out to the IRS.

The parties agree that the Forms 941 Mr. Beg prepared for the original covered periods are false or fraudulent returns within the meaning of section 6501(c)(1).[9] Respondent does not allege that Ms. Fouche, petitioner, or the payroll company intended to evade tax or willfully attempted to defeat or evade tax. Respondent does allege, however, that Mr. Beg intended to evade tax within the meaning of section 6501(c)(1) and/or willfully attempted to defeat or evade taxes within the meaning of section 6501(c)(2)[10] when he filed fraudulent Forms 941 for the original covered periods. Petitioner disagrees.

### B. Mr. Beg Filed Amended Forms 941 for the Periods Ending June 30, 1997, and December 31, 1998

The payroll company prepared petitioner's Forms 941 for the periods ending June 30, 1997, and December 31, 1998, and Ms.

---

[9] Generally the Commissioner must assess a tax within 3 years after the return is filed. Sec. 6501(a). An exception to the general rule is found in sec. 6501(c)(1): "In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time."

[10] Sec. 6501(c)(2) provides: "In case of a willful attempt in any manner to defeat or evade tax imposed by this title (other than tax imposed by subtitle A or B), the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time." While sec. 6501(c)(1) applies to any tax imposed under the Code, sec. 6501(c)(2) applies only to employment and excise taxes.

Fouche filed them, without including payments of the balances due, on July 31, 1997, and January 31, 1999, respectively.[11] The returns the payroll company prepared did not claim advance EIC payments made to employees, and the parties agree that these returns were not false or fraudulent.

Unbeknownst to Ms. Fouche, Mr. Beg prepared, signed, and filed amended Forms 941 for the periods ending June 30, 1997, and December 31, 1998. On the amended return for the period ending December 31, 1998,[12] Mr. Beg claimed false advance EIC payments made to employees of $48,812. The IRS applied a refundable credit to petitioner's account in the amount of the false advance EIC payments, and this reduced its December 31, 1998, employment tax liability to $19,654. Petitioner's account transcript shows that shortly after Mr. Beg filed the amended return two payments totaling $11,635 were made, at least one of which the record shows was in the form of a check from Mr. Beg's Himalayan account. The IRS applied overpayment credits from petitioner's

---

[11] Respondent assessed tax of $54,374.31 for the period ending June 30, 1997, and tax of $68,375.62 for the period ending Dec. 31, 1998.

[12] Mr. Beg filed the amended return for the period ending Dec. 31, 1998, before filing the amended return for the period ending June 30, 1997.

periods unrelated to those at issue to cover the remainder of the December 31, 1998, period's balance.[13]

On the amended return for the period ending June 30, 1997, Mr. Beg claimed false advance EIC payments made to employees of $45,091. The false advance EIC payments reduced petitioner's balance due for the period from $54,374 to $9,283, and Mr. Beg paid the reduced balance by check from his Himalayan account.[14]

It is not clear whether or how Mr. Beg benefited from the filing of the amended returns or whether he filed the amended returns with the intention of covering up the fraudulent returns that he had previously filed for the periods ending March 31, June 30, and December 31, 1999.[15]

Mr. Beg's Criminal Case

On June 10, 2002, the United States filed a complaint against Mr. Beg alleging, among other crimes, that he: (1) Knowingly and intentionally made, uttered, and possessed forged securities of petitioner and the other bus companies in violation

---

[13] The IRS later received from petitioner the full amount of its Dec. 31, 1998, employment tax liability.

[14] The IRS later received from petitioner the full amount of its June 30, 1997, employment tax liability.

[15] Mr. Beg filed the amended return for the period ending Dec. 31, 1998, after he had filed the fraudulent return for the period ending Mar. 31, 1999, and he filed the amended return for the period ending June 30, 1997, after he had filed the fraudulent returns for the periods ending June 30 and Dec. 31, 1999.

of 18 U.S.C. sec. 513(a); (2) knowingly deposited into his Himalayan account approximately $349,865 derived from the making and possessing of forged securities of petitioner and the other bus companies in violation of 18 U.S.C. sec. 1957(a) and (b)(1) (money laundering); (3) signed false tax returns in violation of section 7206(1); and (4) prepared and presented false tax returns in violation of section 7206(2).[16]  In the complaint the United States, by sworn statement of a special agent of respondent's Criminal Investigation Division, alleged that Mr. Beg:  (1) Knowingly and willfully prepared and subscribed to false Forms 941 in petitioner's name; (2) fraudulently claimed that petitioner's employees had received advance EIC payments; (3) forged checks drawn on petitioner's account; and (4) received from Ms. Fouche checks made payable to the IRS, which he later altered to appear as if they were made payable to Himalayan Hanoi Craft.  Ms. Fouche had no knowledge of Mr. Beg's criminal activity before his arrest.

On October 8, 2002, Mr. Beg pleaded guilty to charges of money laundering, knowingly and willfully signing false tax returns, and knowingly and willfully preparing and presenting false tax returns.  In 2006 he passed away before being sentenced for his crimes.

---

[16]  The violation of sec. 7206(2) relates to Mr. Beg's fraudulent preparation of Forms 1040, U.S. Individual Income Tax Return, for taxpayers unrelated to petitioner.

Petitioner's Civil Examination

On or about May 28, 2004, respondent, on the basis of the guilty plea entered in Mr. Beg's criminal trial, commenced a civil examination of petitioner's Forms 941 for the periods at issue. The examination concerned the recovery of petitioner's employment taxes that respondent had failed to collect because of Mr. Beg's filing of the fraudulent Forms 941. On November 28, 2006, Laurie Greenberg (Ms. Greenberg), a certified public accountant representing petitioner during the examination, signed Forms 2504, Agreement to Assessment and Collection of Additional Tax and Acceptance of Overassessment, consenting to the assessment and collection of additional employment taxes for the periods at issue.[17] Pursuant to the signed Forms 2504, respondent assessed additional taxes as follows:

| Taxable Period Ending | Additional Tax | Assessment Date |
| --- | --- | --- |
| June 30, 1997 | $42,211 | Feb. 26, 2007 |
| Dec. 31, 1998 | 48,812 | Mar. 12, 2007 |
| Mar. 31, 1999 | 40,539 | Feb. 26, 2007 |
| June 30, 1999 | 45,388 | Feb. 26, 2007 |
| Dec. 31, 1999 | 85,927 | Feb. 26, 2007 |
| Mar. 31, 2000 | 53,082 | Feb. 26, 2007 |
| June 30, 2000 | 55,656 | Feb. 26, 2007 |

---

[17] By Aug. 28, 2003, the 3-year period of limitations on assessment and collection under sec. 6501(a) had expired for all periods at issue. Thus, Ms. Greenberg signed the Forms 2504 more than 3 years after the limitations periods under sec. 6501(a) had expired.

Respondent did not determine a fraud penalty pursuant to section 6663 against petitioner. The parties agree that respondent assessed the additional employment taxes for the periods at issue more than 3 years after Mr. Beg filed petitioner's Forms 941.

Petitioner's Challenge to the Timeliness of the Assessments

On or about September 11, 2007, Ms. Greenberg informed respondent that petitioner believed the assessments were made outside the limitations periods. In early January 2008 respondent mailed to petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing concerning petitioner's unpaid additional tax. On January 15, 2008, respondent received petitioner's Form 12153, Request for a Collection Due Process Hearing (CDP request). Petitioner alleged the following in its CDP request: "The IRS relied on the fraud penalty to assess the taxes. However, we eliminated not only the fraud penalty, but all penalties.[18] Therefore, the assessment should not stand.

---

[18] Initially the IRS determined that petitioner was liable for failure to timely file additions to tax under sec. 6651(a)(1), failure to timely pay additions to tax under sec. 6651(a)(2), failure to make deposit of taxes penalties under sec. 6656(a), and civil fraud penalties under sec. 6663. However, after investigation the IRS concluded that petitioner's reliance on Mr. Beg to file the Forms 941 and pay the taxes owed constituted reasonable cause, and therefore it was not liable for the additions to tax and failure to deposit penalties. The IRS also concluded that neither petitioner nor Ms. Fouche had had any role in the claiming of the false advance EICs, and therefore the civil fraud penalties should not be determined against petitioner.

They assessed over 7 years after the return was filed.  The statute was only for 3 years."

On May 27, 2008, Ms. Greenberg met with Gerard Ohrtman (Mr. Ohrtman), a settlement officer with the IRS Appeals Office (Appeals), to discuss the assessments against petitioner and the issue petitioner raised in the CDP request.  Mr. Ohrtman explained that in his opinion the assessments were valid.  On December 11, 2008, Appeals issued petitioner a notice of determination sustaining the proposed levy.  Petitioner then filed a petition with the Court.

## Discussion

### I.   Standard of Review

Section 6330(a) provides that no levy may be made on any property of a taxpayer unless the Secretary has first notified the taxpayer in writing of his right to a hearing.  If the taxpayer properly requests a hearing under section 6330(a), the taxpayer is entitled to a hearing before an impartial Officer of Appeals (CDP hearing).  Sec. 6330(b).  At the CDP hearing the taxpayer may challenge the underlying tax liability only if the taxpayer did not receive a statutory notice of deficiency or otherwise have a prior opportunity to dispute the tax liability. Sec. 6330(c)(2)(B).  A taxpayer's claim that the Commissioner is time barred from collecting its Federal tax liability constitutes a challenge to the underlying tax liability.  Boyd v.

Commissioner, 117 T.C. 127, 130 (2001).  This Court has jurisdiction to review Appeals' determination under sec. 6330(d)(1).  Where the taxpayer's underlying liability was properly at issue, we review Appeals' determination de novo. Sego v. Commissioner, 114 T.C. 604, 610 (2000).

Because petitioner did not receive a statutory notice of deficiency or otherwise have a prior opportunity to dispute the tax liabilities,[19] the underlying tax liabilities were properly at issue at the CDP hearing.  Accordingly, we will review Appeals' determination that the statute of limitations remained open de novo.

## II.  Statute of Limitations

The Commissioner generally must assess any tax imposed by the Code within a 3-year period after a taxpayer files his or her return.  Sec. 6501(a).  One exception to this general rule exists, however, for the filing of a false or fraudulent return with the intent to evade tax.  Sec. 6501(c)(1).[20]  Another exception exists for a willful attempt in any manner to defeat or

---

[19]  Respondent does not argue, and nothing in the record indicates, that petitioner had the opportunity to challenge its employment tax liabilities at any time during respondent's examination of petitioner's Forms 941 or before Ms. Greenberg's signing the Forms 2504.

[20]  See supra note 9.

evade tax.[21]  Sec. 6501(c)(2).  In either of those situations the Commissioner may assess the tax, or commence a proceeding in court for the collection of the tax, at any time.  Sec. 6501(c). In Allen v. Commissioner, 128 T.C. 37 (2007), we held that, for purposes of section 6501(c)(1), the limitations period remains open indefinitely regardless of whether it was the taxpayer or the taxpayer's tax return preparer who had the intent to evade tax.  Section 6501(c)(2), however, was not at issue in Allen.

Respondent, relying on Allen, argues that the limitations periods remain open for the original covered periods because petitioner's returns filed for those periods were false or fraudulent with the intent to evade tax, even though it was Mr. Beg, not Ms. Fouche, petitioner, or the payroll company, whom respondent argues had the intent to evade tax.  Respondent also argues that the limitations periods remain open for the original covered periods because Mr. Beg willfully attempted to defeat or evade tax.  In this regard respondent asks us to conclude that section 6501(c)(2) extends the limitations period for a willful attempt to evade tax in any manner, even though it may not be the taxpayer who makes the willful attempt.  Respondent relies exclusively on section 6501(c)(2) to keep open the limitations periods for the periods ending June 30, 1997, and December 31, 1998.

---

[21]  See supra note 10.

Petitioner argues that respondent has not proved by clear and convincing evidence that Mr. Beg intended to evade tax or willfully attempted to defeat or evade tax for any of the periods at issue.[22] Therefore, according to petitioner, respondent cannot rely on section 6501(c)(1) or (2) and respondent is time barred from assessing and collecting the employment taxes for the periods at issue.

III.  Whether Respondent Proved by Clear and Convincing Evidence That Mr. Beg Intended To Evade Tax or Willfully Attempted To Defeat or Evade Tax for Any of the Periods at Issue

To keep open the limitations periods under section 6501(c)(1) or (2), respondent must show, by clear and convincing evidence, that Mr. Beg intended to evade tax or willfully attempted to defeat or evade tax, respectively, when he filed petitioner's false Forms 941 for the periods at issue.  Secs. 7454(a), 6501(c)(1) and (2); Rule 142(b).  The burden of proving fraud remains on respondent despite the parties' decision to submit this case fully stipulated under Rule 122.  See Rule 122(b); Borchers v. Commissioner, 95 T.C. 82, 91 (1990), affd. 943 F.2d 22 (8th Cir. 1991).

---

[22] Petitioner also argues that respondent cannot rely on sec. 6501(c)(1) or (2) to extend the limitations periods because Allen v. Commissioner, 128 T.C. 37 (2007), is not controlling and neither petitioner nor the payroll company intended to evade tax or willfully attempted to defeat or evade tax.  Thus, petitioner argues that the 3-year limitations period of sec. 6501(a) controls and respondent is time barred from assessing and collecting the employment taxes for the periods at issue.

To prove fraudulent intent, respondent must show by clear and convincing evidence that Mr. Beg had the specific intent to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes.  Allen v. Commissioner, supra; Parks v. Commissioner, 94 T.C. 654, 662 (1990); McGee v. Commissioner, 61 T.C. 249, 256 (1973), affd. 519 F.2d 1121 (5th Cir. 1975); Christians v. Commissioner, T.C. Memo. 2003-130.  Although the Court has not expounded on what constitutes a willful attempt to defeat or evade tax under section 6501(c)(2), we have said that there is little "meaningful distinction between [a] 'false or fraudulent return with the intent to evade tax' and [a] willful attempt in any manner to defeat or evade tax.'"  Carl v. Commissioner, T.C. Memo. 1981-202.  The existence of fraud is a question of fact to be resolved upon consideration of the entire record.  DiLeo v. Commissioner, 96 T.C. 858, 874 (1991), affd. 959 F.2d 16 (2d Cir. 1992).

Respondent argues that the record clearly and convincingly shows that Mr. Beg intended to evade tax and/or willfully attempted to defeat or evade employment taxes for all of the periods at issue.  Specifically, respondent points out that Mr. Beg filed fraudulent Forms 941 and amended Forms 941, pleaded guilty to violating section 7206(1), and had the knowledge and

experience to know that his actions would result in the evasion of petitioner's employment taxes.[23]

Petitioner counters that the stipulated facts and incorporated exhibits show that Mr. Beg intended to embezzle from petitioner and that he filed the Forms 941 and amended Forms 941 solely to cover up his embezzlement, not to defeat or evade petitioner's employment taxes. Therefore, according to petitioner, the record does not show by clear and convincing evidence that Mr. Beg had the specific intent to evade tax or willfully attempted to defeat or evade tax, and respondent has failed to carry his burden of proof.

On the record before us, we do not find that respondent has proved by clear and convincing evidence that Mr. Beg had the specific intent to evade tax or willfully attempted to defeat or evade tax when he filed false Forms 941 and amended Forms 941 for the periods at issue. Respondent points to a number of egregious

---

[23] Courts have developed a nonexclusive list of factors or "badges of fraud" that demonstrate fraudulent intent. Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992). These badges of fraud include: (1) Understatement of income; (2) inadequate records; (3) implausible or inconsistent explanations of behavior; (4) concealment of income or assets; (5) failure to cooperate with tax authorities; (6) filing false documents; (7) failure to make estimated tax payments; (8) dealing in cash; (9) engaging in illegal activities; and (10) engaging in a pattern of behavior that indicates an intent to mislead. Vogt v. Commissioner, T.C. Memo. 2007-209, affd. 336 Fed. Appx. 758 (9th Cir. 2009). No single factor is necessarily sufficient to establish fraud; however, a combination of several of these factors may constitute persuasive evidence of fraud. Niedringhaus v. Commissioner, supra at 211.

acts Mr. Beg performed that led to the IRS' failing to collect the full amount of petitioner's employment taxes.  However, we cannot say that respondent has proved by clear and convincing evidence that Mr. Beg's filing of the Forms 941 and amended Forms 941 shows conduct intended to defeat or evade petitioner's taxes and not an incidental consequence or secondary effect of his embezzlement scheme.  Petitioner argues that Mr. Beg intended only to cover up his embezzlement scheme and not defeat or evade petitioner's taxes.  Respondent cannot point to anything in the record that leads us to believe petitioner's argument is meritless.  Additionally, while respondent argues that Mr. Beg's conviction under section 7206(1) shows that he intended to evade tax, we note that a conviction under section 7206(1) is a factor to be considered and is not dispositive.  See Wright v. Commissioner, 84 T.C. 636 (1985); Wickersham v. Commissioner, T.C. Memo. 1999-276.  This is because the intent to evade tax is not an element of the crime charged under section 7206(1).  See Wright v. Commissioner, supra at 641, 643.

Accordingly, we find that respondent has not proved by clear and convincing evidence that Mr. Beg intended to evade tax or willfully attempted to defeat or evade tax for the periods at issue.

IV.  Conclusion

Because respondent did not show by clear and convincing evidence that Mr. Beg filed fraudulent returns with the intent to evade tax or willfully attempted to defeat or evade tax, the limitations periods for assessment are not extended under either section 6501(c)(1) or (2).  Thus, the 3-year limitations period of section 6501(a) controls the timeliness of respondent's assessments of petitioner's additional taxes.  Respondent concedes that the assessments of petitioner's additional taxes occurred more than 3 years after Mr. Beg filed petitioner's returns.  Accordingly, respondent is time barred from assessing the additional tax for all periods at issue, and Appeals erred as a matter of law in determining that collection activity should proceed to collect petitioner's additional tax for the periods at issue.

We have considered all arguments made by the parties, and to the extent not discussed above, we conclude that those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered for petitioner.