**12-1040-ag**
*City Wide Transit, Inc. v. Comm'r*

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

--------------------

August Term, 2012

(Argued: February 1, 2013       Decided: March 1, 2013)

Docket No. 12-1040-ag

--------------------

CITY WIDE TRANSIT, INC.,

*Petitioner-Appellee*,

–v.–

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellant*.

--------------------

Before:
        WALKER, CABRANES, WESLEY, *Circuit Judges*.

The Commissioner of Internal Revenue appeals from an order of the United States Tax Court (Vasquez, *J.*) that prevented the Commissioner from collecting City Wide Transit, Inc.'s outstanding employment taxes for seven taxable quarters dating as far back as 1997 and as recently as 2000. The tax court held that the Commissioner was time barred from collecting these taxes under § 6501(a) of the Internal Revenue Code and that the tolling provisions under §§ 6501(c)(1) and (2) of the I.R.C. did not apply. We disagree and hold that an accountant who filed fraudulent tax returns on behalf of a company in order to embezzle money otherwise owed to the Commissioner intentionally evaded taxes, thereby triggering the tolling provision under § 6501(c)(1). Accordingly, the Commissioner was free to assess City Wide's taxes for those seven quarters at any

time. For the reasons stated below, the order of the tax court is **REVERSED.**

IVAN C. DALE (Michael J. Haungs, *on the brief*), *for* Kathryn Keneally, Assistant Attorney General, Washington, D.C.

GARY HOPPE (Herbert C. Kantor, *on the brief*), Kantor, Davidoff, Wolfe, Mandelker, Twomey & Gallanty, P.C., New York, NY.

WESLEY, *Circuit Judge*:

Some have suggested that the Commissioner of Internal Revenue ("Commissioner") rarely loses in tax court, tax court decisions are rarely appealed, and federal circuit courts rarely reverse tax court decisions. *See, e.g.*, James Edward Maule, *Instant Replay, Weak Teams, and Disputed Calls: An Empirical Study of Alleged Tax Court Judge Bias*, 66 Tenn. L. Rev. 351, 353, 401 (1999) (reviewing empirical studies). Despite some of these expectations, after losing in tax court, the Commissioner appealed, and we now reverse.

This case requires us to determine whether an accountant that filed fraudulent tax returns on behalf of a company in order to embezzle money that the company otherwise owed the Commissioner intentionally evaded that company's taxes within the meaning of § 6501(c)(1) of the

Internal Revenue Code ("I.R.C.").  Similarly, we must also determine whether that accountant triggered that tolling provision when he fraudulently amended tax returns that the company had already filed.

**I. BACKGROUND**

A.   The Fraudulently Filed Tax Returns

Ms. Ray Fouche ("Fouche") owned several bus companies, including Petitioner-Appellee City Wide Transit, Inc. ("City Wide").  City Wide transported handicapped children throughout New York City.  By the end of 1998, Fouche's bus companies, including City Wide, collectively accrued about $700,000.00 in outstanding payroll tax liabilities unrelated to this appeal.

To negotiate a reduction of these liabilities, Fouche hired Manzoor Beg, who falsely held himself out as a certified public accountant, and gave him a blank power of attorney.  On behalf of City Wide, Fouche paid Beg $30,000.00 in April 1999 and promised him 25% of the amount he successfully saved City Wide as result of his negotiations.  Fouche also hired a third-party payroll service, Brand's Paycheck, Inc. ("Brand's"), to prepare the Employer's Quarterly Federal Tax Return on Forms 941 for the

tax quarters relevant to this appeal: June 1997; December 1998; March 31, June 30, and December 31, 1999; and March 31 and June 30, 2000.  For each of those last five quarters, Fouche drafted checks payable to the IRS sufficient to cover City Wide's liabilities and gave them, along with the corresponding returns that Brand's prepared, to Beg, who in turn promised to deliver them to the revenue officer with whom he was negotiating.[1]

Instead of filing the correct returns, however, Beg prepared, signed, and filed another set of returns on Forms 941 for those five quarters (collectively, the "Beg returns"). In those returns, Beg fraudulently added advance earned income credit ("EIC") payments that significantly reduced City Wide's tax liabilities.  Beg then altered the checks that City Wide drafted by changing the payee from the IRS to an account that he maintained at Habib American Bank in the name of Himalayan Hanoi Craft, deposited or cashed those checks for his own personal use, and drafted new checks to cover City Wide's now fraudulently reduced tax liabilities.

---

[1]City Wide had already filed Forms 941 that Brand's prepared for June 1997 and December 1998.

Moreover, Beg also prepared, signed, and filed amended Forms 941 for the June 1997 and December 1998 quarters (the "Beg amendments") in order to add fraudulent EIC payments to the returns that City Wide previously filed. Beg did not personally benefit from these amendments but presumably filed them in an effort to conceal the fraudulent EIC payments he included in the returns that he drafted. Through this scheme, Beg embezzled hundreds of thousands of dollars from City Wide, and City Wide received certain tax refunds. The following table represents the actual reduction in City Wide's taxes resulting from the Beg amendments and returns.

| Tax Quarter Ending [Month/Year] | Fraudulent EIC Reductions |
|---|---|
| June 1997 | $42,211.00 |
| December 1998 | $48,812.00 |
| March 1999 | $40,539.00 |
| June 1999 | $45,388.41 |
| December 1999 | $85,927.41 |
| March 2000 | $53,081.77 |
| June 2000 | $55,655.84 |
| Total | $371,615.43 |

B. The United States Prosecutes Beg

On June 10, 2002, after discovering Beg's scheme, the United States filed a complaint in United States District Court. That complaint alleged, *inter alia*, that Beg (1) knowingly and willfully prepared false Employer's Quarterly Federal Tax Returns for City Wide in violation of 26 U.S.C. § 7206(1); (2) knowingly and intentionally made and possessed forged checks drawn on City Wide's account in violation of 18 U.S.C. § 513(a); and (3) knowingly and intentionally deposited money derived from those forged checks into his Himalayan bank account in violation of 18 U.S.C. § 1957(a) and (b)(1). On October 8, 2002, Beg waived indictment and, *inter alia*, pled guilty to preparing false tax returns for City Wide. Between 2003 and 2005, the district court commenced certain sentencing proceedings, until April 7, 2006 when the district court dismissed the case because Beg had died.

C. The Commissioner Examines City Wide's Returns

In May 2004, based on Beg's guilty plea, the Commissioner began a civil examination of City Wide's returns to recover the taxes that had been underassessed as a result of Beg's fraud. Subsequently, the Commissioner assessed the following:

6

| Taxable Period | Assessment Date | Additional Tax Owed |
|---|---|---|
| June 1997 | February 26, 2007 | $42,211.00 |
| December 1998 | March 12, 2007 | $48,812.00 |
| March 1999 | February 26, 2007 | $40,539.00 |
| June 1999 | February 26, 2007 | $45,388.41 |
| December 1999 | February 26, 2007 | $85,927.41 |
| March 2000 | February 26, 2007 | $53,081.77 |
| June 2000 | February 26, 2007 | $55,665.84 |

The Commissioner did not assess any fraud penalties against Fouche or City Wide.

City Wide challenged these assessments as time barred because they were outside of the three-year statute of limitations contemplated by § 6501(a) of the I.R.C. The Commissioner then sent City Wide a Letter 1058, titled Final Notice, Notice of Intent to Levy and Notice of Your Right to a Hearing, on January 2, 2008. On January 15, 2008, City Wide requested a collection due process ("CDP") hearing again asserting that the assessments were outside of the limitations period. The settlement officer assigned to the CDP hearing conducted a face-to-face hearing with City Wide on May 27, 2008. After exchanging several letters, City Wide requested a Notice of Determination in order to pursue

7

the case in tax court. On December 11, 2008, the Commissioner issued a Notice of Determination that upheld the assessments.

D.   The Tax Court Rules in Favor of City Wide

After the Notice of Determination was issued, City Wide litigated the assessment in tax court maintaining that the three-year statute of limitations barred the Commissioner from the relevant assessments and that the I.R.C.'s tolling provisions were inapplicable. The tax court noted that the Commissioner could trigger the tolling provisions under I.R.C. § 6501(c)(1), (2), or both by showing with "clear and convincing evidence that Mr. Beg had the specific intent to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes." *City Wide Transit, Inc. v. Comm'r*, 102 T.C.M. (CCH) 542, 2011 WL 5884981, at *5 (2011). The tax court concluded, however, that the Commissioner did not meet that standard.

Although the Commissioner "point[ed] to a number of egregious acts Mr. Beg performed" that caused the Commissioner to fail to collect the full amount of City Wide's taxes, the tax court thought those actions did not prove that Beg filed fraudulent returns "intend[ing] to

8

defeat or evade [City Wide's] taxes" and that tax evasion was only the "incidental consequence or secondary effect of [Beg's] embezzlement scheme." *Id.* at *6. The tax court noted City Wide's argument that Beg "intended only to cover up his embezzlement scheme and not defeat or evade [City Wide]'s taxes" and that the Commissioner could not "point to anything in the record that [caused it] to believe [that] argument [was] meritless." *Id.* Accordingly, the tax court concluded that the Commissioner was time barred from assessing the additional taxes and entered judgment for City Wide.

The Commissioner now appeals that decision.

## II. DISCUSSION

We review the decisions of a tax court "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." 26 U.S.C. § 7482(a)(1). Accordingly, we "review the legal rulings of the [t]ax [c]ourt *de novo* and its factual determinations for clear error." *Scheidelman v. Comm'r*, 682 F.3d 189, 193 (2d Cir. 2012). In so doing, we "owe no deference to the [t]ax [c]ourt's statutory interpretations, its relationship to us being that of a district court to a court of appeals, not

9

that of an administrative agency to a court of appeals."

*Madison Recycling Assocs. v. Comm'r*, 295 F.3d 280, 285-86

(2d Cir. 2002) (internal quotation marks and citation

omitted).  We treat taxpayer intent as a question of fact

subject to clear error review.  *See Redd v. N.Y. Div. of*

*Parole*, 678 F.3d 166, 178 (2d Cir. 2012) ("Issues of

causation, intent, and motivation are questions of fact.").

We will, therefore, reverse a tax court's decision regarding

taxpayer intent only if "on the entire evidence[, we are]

left with the definite and firm conviction that a mistake

has been committed."  *United States v. Alcan Aluminum Corp.*,

315 F.3d 179, 186 (2d Cir. 2003).

A.    The Statute of Limitations and Its Exceptions

The I.R.C. requires that the Commissioner assess any tax imposed "within 3 years after the return was filed." I.R.C. § 6501(a).  The I.R.C., however, contains certain exceptions that make the limitations period limitless.  In relevant portion the I.R.C. provides:

> (1) False return.  In the case of a false or
> fraudulent return with the intent to evade tax,
> the tax may be assessed, . . . at any time.

I.R.C. § 6501(c)(1).[2]

---

[2] The Commissioner also relies on I.R.C. § 6501(c)(2), which lifts the statute of limitations "[i]n case of a willful attempt in any manner to defeat or evade tax imposed by this title."  The

10

"The burden of proving that a false or fraudulent return was filed with intent to evade tax is on the Commissioner . . . and such proof must be made by clear and convincing evidence." *Schaffer v. Comm'r*, 779 F.2d 849, 857 (2d Cir. 1985)(citing I.R.C. § 7454(a)). However, "[b]ecause tax evaders do not reveal their fraudulent evasion, the Commissioner may establish fraud through circumstantial evidence." *Pittman v. Comm'r*, 100 F.3d 1308, 1319 (7th Cir. 1996). To prove intentional evasion of tax, "the Commissioner must establish that (1) an underpayment exists; and (2) some portion of the underpayment was due to fraud." *Loren-Maltese v. Comm'r*, 104 T.C.M. (CCH) 115, 2012 WL 3079052, at *1 (2012).

In analyzing § 6501(c)(1), we remain mindful that "limitations statutes barring the collection of taxes otherwise due and unpaid are strictly construed in favor of the [Commissioner]." *Bufferd v. Comm'r*, 506 U.S. 523, 527 n.6 (1993) (internal quotation marks and citations omitted).

---

tax court has previously stated that "it is difficult to articulate a meaningful distinction between 'false or fraudulent return with the intent to evade tax' and 'willful attempt in any manner to defeat or evade tax.'" *Carl v. Comm'r*, 41 T.C.M. (CCH) 1346, 1981 WL 10527, at n.16 (1981). Although there may be a distinction between § 6501(c)(1) and § 6501(c)(2) in some cases, we would, for the reasons set out in this Opinion, reach the same conclusion under either provision here. We therefore refer only to § 6501(c)(1).

"Accordingly, taking [that obligation] into account, we conclude that the limitations period for assessing [the taxpayer's] taxes is extended if the taxes were understated due to fraud of the preparer." *Browning v. Comm'r*, 102 T.C.M. (CCH) 460, 2011 WL 5289636, at *13 n.14 (2011) (quoting *Allen v. Comm'r*, 128 T.C. 37, 40, 2007 WL 654357, at *40 (2007)). This makes intuitive sense because "the special disadvantage to the Commissioner in investigating fraudulent returns is present if the income tax return preparer committed the fraud that caused the taxes on the return to be understated." *Allen*, 2007 WL 654357, at *40.

B.    The Tax Court Clearly Erred

Here, the Commissioner concedes that City Wide's additional taxes were assessed outside the three-year limitations period. Moreover, City Wide concedes that Beg filed false or fraudulent tax returns and amendments on its behalf and that City Wide's returns trigger the tolling provision if we find that Beg filed them with the intent to evade City Wide's taxes.[3] We are confronted, then, with a

---

[3]In front of the tax court, City Wide argued that it was not liable for the returns Beg prepared where "(1) [City Wide] did not know of the preparer's defalcations; [and] (2) [City Wide] did not sign or knowingly allow to be filed a false return . . . ." Joint App'x 360; *see also id.* at 350-57 (developing the argument and citing cases). The Commissioner anticipated these claims on appeal and rebutted them in its opening brief. City

12

very narrow question: whether, considering all of the evidence, the tax court made a mistake by concluding that the Commissioner failed to establish by clear and convincing evidence that Beg intended to evade City Wide's taxes through his embezzlement scheme. Beg's scheme clearly does, and the tax court made a mistake.

Beg drafted and filed five fraudulent returns and two fraudulent amendments to evade tax. By concluding that the Commissioner failed to prove that Beg intended to evade City Wide's taxes and that, at best, tax evasion was but an "incidental," "secondary effect" to Beg's embezzlement scheme, the tax court inappropriately substituted motive for intent. The statute is agnostic as to the attendant motivations for submitting a fraudulent return and only requires that the Commissioner prove a fraudulent return was filed with an intent to evade, that is avoid, paying a tax otherwise due. Thus, "if one of [a conspiracy's] objectives, even a minor one, be the evasion of federal taxes, the offense is made out, though the primary objective

Wide, however, conceded these issues in its response brief. City Wide Br. at 16. Moreover, each member of this panel asked City Wide whether it had intended this concession, and City Wide responded affirmatively to each of us in turn. Accordingly, we accept this concession without deciding whether certain factual situations might arise that sever the tax*payer*'s liability from the tax-*preparer*'s wrongdoing.

may be concealment of another crime." *Ingram v. United States*, 360 U.S. 672, 679-80 (1959). Moreover, "if a 'tax evasion motive plays any part' in certain conduct, an 'affirmative willful attempt' to evade taxes may be inferred from that conduct." *United States v. Klausner*, 80 F.3d 55, 63 (2d Cir. 1996) (quoting *Spies v. United States*, 317 U.S. 492, 499 (1943)). The Commissioner only had to prove that Beg intended to underpay the Commissioner taxes that City Wide owed when he filed a fraudulent return on City Wide's behalf, not that he intended to avoid City Wide's taxes for City Wide's benefit.

Moreover, tax evasion was not an incidental or secondary effect to Beg's scheme. The tax court's analysis suggests that Beg's tax evasion was an externality, as if shortchanging the Commissioner did not figure into Beg's decision-making calculus. To the contrary, Beg's scheme was tax evasion; tax evasion was not a subordinate element to a more grandiose scheme. It is of no consequence that Beg evaded City Wide's taxes for his own benefit, and the tax court should have allowed the Commissioner to assess the taxes that City Wide owed because of Beg's returns and amendments.

14

In defense of the tax court's decision, City Wide maintains that the Commissioner's position requires us to read the intent element out of § 6501(c)(1). In developing that argument, City Wide claims that reversing the tax court would require us to assume *ipse dixit* that Beg must have intended to avoid City Wide's taxes based on the fraudulent returns alone. City Wide's argument is misplaced, and this case requires no assumption on our part. Beg filed returns intending to avoid paying the Commissioner money that was otherwise due; Beg's calculated scheme to embezzle that money proves that the returns were fraudulent.

This would be another case if, for example, Beg falsely recorded certain personal expenses as corporate expenses on City Wide's ledger that in turn caused City Wide to file a tax return that fraudulently understated its income. If that had been the case, Beg's fraud on the company would have *caused* the company to file a false return, and we would not assume that the company intended to evade a tax by filing that false return. Here, however, Beg's actions were not as secondary or remote to the fraudulent returns as the tax court suggested; Beg was not a third party unrelated to the preparation and filing of the returns. *See* I.R.S. Chief Counsel Advisory 201238026, 2012 WL 4261126 (June 2012).

15

Accordingly, the Commissioner proved "(1) that . . . underpayment[s] exist[ed] and (2) that fraud exist[ed], i.e., that [Beg] intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes." *Browning*, 2011 WL 5289636, at *10.

We note briefly that Beg's motivation for fraudulently amending the June 1997 and December 1998 returns that City Wide had previously filed is unclear. He presumably did so in order to cover up the false EICs he included on the five returns that he drafted and filed in the first instance. But again, Beg's motivations are inconsequential, and it is clear that he filed the two amended returns intending to evade tax for the foregoing reasons.

Accordingly, the Commissioner presented clear and convincing evidence that Beg intended to evade City Wide's taxes for the seven taxable quarters in question, thereby triggering the tolling provision under § 6501(c)(1). The tax court made a mistake, and we reverse.

16

## III. CONCLUSION

The tax court's order of November 23, 2011 precluding the Commissioner for assessing City Wide's taxes for the seven relevant quarters is hereby **REVERSED**. The Commissioner is free to assess the taxes for the seven relevant quarters at any time.