Opinion for the court filed by Circuit Judge CHEN. Concurring opinion filed by Circuit Judge O’MALLEY. Dissenting opinion filed by Chief Judge PROST.
CHEN, Circuit Judge.
This case is an appeal from a tax readjustment and refund action filed in the U.S. Court of Federal Claims (Claims Court). Section 6501(a) of the Internal Revenue Code (I.R.C. or Code) prohibits the Internal Revenue Service (IRS) from assessing tax if more than three years has elapsed from the date of the tax return. Section 6501(c)(1), however, recognizes an exception to this three-year rule and suspends the statute of limitations in cases involving “a false or fraudulent return with the intent to evade tax.” The Claims Court determined that § 6501(a)’s three-year statute of limitations barred the IRS from administratively adjusting, in 2010, the 1999 partnership tax return filed by plaintiff-appellee BASR Partnership (BASR). See BASR P’ship v. United States, 113 Fed.Cl. 181 (2013). The Government appealed. Although the Government does not argue that BASR itself acted with the intent to evade tax, the Government does contend that BASR’s outside counsel, an attorney involved in structuring certain financial transactions reported on the 1999 return, acted “with the intent to evade tax.” According to the Government, this attorney’s conduct triggered § 6501(c)(1) and suspended the three-year limitation on the IRS’s ability to assess and impose tax on BASR for the 1999 tax return. The Claims Court disagreed and held that § 6501(e)(l)’s suspension of the three-year limitation applies only when the taxpayer — and not a third party — acts with the requisite “intent to evade tax.” Because we agree with the Claims Court, we affirm.
BACKGROUND
I
The IRS has authority to review tax returns filed by a taxpayer. I.R.C. § 6201(a). During this review, if the IRS concludes that the taxpayer has underpaid, the IRS assesses those taxes and imposes any additional penalties for the underpayment. Id.; see, e.g., § 6663. As a general rule, the IRS must make any such assessment “within 3 years after the return was filed.” I.R.C. § 6501(a). The Code establishes certain exceptions that may extend or suspend this three-year limitations period. See generally I.R.C. § 6501(c). Section 6501(c)(1) recognizes one such exception: “In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed ... at any time.” I.R.C. § 6501(c)(1).
The concept of limiting, the time period during which the IRS could assess tax originated almost 100 years ago in the same statutory provision that authorized the IRS to impose penalties for underpayment. See Revenue Act of 1918, Pub.L. No. 54-254, 40 Stat. 1057. Section 250(b) of the 1918 Act authorized the IRS to impose penalties when an underpayment resulted either from negligence or a “false or fraudulent” intent to evade the tax. The Act barred the IRS from imposing a penalty if “the return is made in good faith and the understatement of the amount in the return is not due to any fault of the taxpayer.” Jd. Along the same lines, § 250(d) limited the time during which the IRS could assess tax after the filing of a tax return, but explicitly provided that this period could be suspended if the case involved a “false or fraudulent return[ ] with intent to evade the tax.” After recodification and reorganization the provision authorizing penalties for fraudulent returns was separated from the section governing extension and suspension of the statute of *1340 limitations. Compare I.R.C. § 6663(a), with I.R.C. § 6501(c)(1).
The taxes at issue here relate to the activities of a partnership. Under the Code, partnerships like BASR are “pass-through” entities. I.R.C. § 701. This means that although the partnership prepares a tax return, I.R.C. § 6031, the partnership itself does not incur tax liability, I.R.C. § 701. Instead, any tax liability arising from items on a partnership return “passes through” to the individual partners, who are then liable for their “distributive share” of the partnership’s gains and losses. Id. §§ 701-702. Because a partnership and its individual partners are treated differently for taxation purposes, Congress enacted the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), which established “coordinated procedures for determining the proper treatment of ‘partnership items’ at the partnership level in a single, unified audit and judicial proceeding.” Alpha I, L.P., ex rel. Sands v. United States, 682 F.3d 1009, 1019 (Fed.Cir.2012).
Under TEFRA, when the IRS disagrees with the tax treatment of a partnership item on any return, the IRS must determine the proper treatment of the partnership item at the partnership level. I.R.C. § 6221. If the IRS finds an underpayment, the IRS must send a final partnership administrative adjustment (FPAA) to the partners. Id. §§ 6223(a)(2), 6223(d)(2), 6225(a). If the partnership disagrees, it may file a “petition for readjustment” in one of several fora, including the Claims Court. Id. § 6226(a); see also 28 U.S.C. § 1508 (“The Court of Federal Claims shall have jurisdiction to hear and to render judgment upon any petition under section 6226 ... of the Internal Revenue Code of 1986.”).
II
The facts relevant to this appeal are undisputed. In 1999, the members of the Pettinati family were about to realize a large capital gain from the sale of their printing business. Before they consummated the sale, Erwin Mayer (Mayer), a lawyer in the Chicago office of the now-defunct law firm of Jenkens & Gilchrist, contacted the Pettinati family and proposed “a tax advantaged investment opportunity.” J.A. 1054. Believing that this opportunity could result in tax savings, the Pettinatis hired Jenkens & Gilchrist, which recommended a series of transactions that could reduce the amount of gain reported to the IRS upon the sale of the family printing business. At the end of these transactions, all stock in the printing business would be owned by a family partnership, BASR. The Pettinatis could then sell the printing business by directing BASR to sell its shares to the buyer.
In addition to recommending the transactions, three attorneys at Jenkens & Gilchrist signed a tax opinion document attesting to the legitimacy of the transactions. Mayer characterized the transactions as a “tax-advantaged investment opportunity.” J.A. 1054. Finally, the Pettinatis received guidance on reporting these transactions on them 1999 tax returns in a manner that was consistent with the opinion letters. The Petti-natis hired Malone & Bailey PLLC to prepare their tax returns. While Malone & Bailey had a long-standing relationship with the Pettinatis, it had no prior connection with Jenkens & Gilchrist. Malone considered the legal opinions provided to the Pettinati family when preparing the BASR and Pettinati tax returns. Ultimately, by creating the BASR Partnership, the Pettinatis greatly reduced the tax liability arising from the sale of their printing business.
*1341 Five years later, in 2004, the IRS received a list of Jenkens & Gilchrist clients, including the Pettinatis, who had employed this type of tax-advantaged investment structure. In 2010, the IRS issued a FPAA to BASR for the tax returns that reflected the sale of the printing business. In the FPAA, the IRS explained that BASR “lacked economic substance” because its “principal purpose ... was to reduce substantially the present value of its purported partners’ ... aggregate federal tax liability.” J.A. 43. The IRS adjusted the tax effect of the printing business sale accordingly, significantly increasing the Pettinatis’ tax liability for the 1999 tax returns.
After filing this action in the Claims Court, BASR sought summary adjudication of its readjustment and refund claim, arguing that the adjustments and increased tax liability in the FPAA were untimely under the three-year statute of limitations found in I.R.C. § 6229(a)[1] and I.R.C. § 6501(a). The Government acknowledged these general limitations periods, but asserted that even though more than three years had passed since BASR’s tax returns were filed, this period remained open under I.R.C. § 6501(c)(1) and 1.R.C. § 6229(c)(1) because the case involved “a false or fraudulent return with the intent to evade tax.” The IRS concedes that the Pettinatis themselves lacked the intent to evade tax. See Oral Argument at 9:49-10:06 available at http:// www.cafc.uscourts.gov/ opinions-orders/0/all/14-5037 (“The government concedes that 6229(c)(1) doesn’t apply because, as you say Your Honor, it’s not the partner who commits the fraud, but in fact the taxpayer’s hired tax professional who set up the shelter for him.”) The IRS similarly does not allege that Malone & Bailey, who prepared the relevant tax returns, acted with intent to evade taxes or to have the Pettinatis evade taxes. The IRS asserted only that Mayer acted with the intent to evade tax when he conceived of and marketed the tax-advantaged investment structure. Contrary to the opinion letters supplied to the Pettinatis by Jenkins & Gilchrist, Mayer knew these transactions were “fraudulently designed to generate large noneconomic tax losses for wealthy taxpayers.”[2] J.A. 945.
*1342 In reply, BASR argued that the three-year statute of limitations is suspended only when the taxpayer intended to evade tax and, therefore, Mayer’s admitted fraud was insufficient and too remote. Ultimately, the Claims Court agreed and granted BASR’s motion for summary judgment. The Government filed a timely notice of appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(3).
Disoussion
We review the grant or denial of summary judgment de novo. Salman Ranch Ltd. v. United States, 573 F.3d 1362, 1370 (Fed.Cir.2009). Summary judgment is appropriate when “there is no genuine dispute as to any material fact and the mov-ant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(a). In this case, the parties do not dispute the relevant facts. We are therefore presented solely with a question of statutory interpretation, which we review de novo. AD Global Fund, LLC ex rel. N. Hills Holding, Inc. v. United States, 481 F.3d 1351, 1353 (Fed.Cir.2007).
The present case requires us to determine whether § 6501(c)(l)’s suspension of the three-year statute of limitations is only triggered by the intent of the taxpayer, as urged by BASR, or whether, as the Government maintains, the requisite intent can be that of a third-party who is more remotely connected with the relevant tax return.[3] Statutory interpretation begins with the words of the statute. Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002). “The first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.” Id. (internal quotation marks omitted). This inquiry “ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent.” Id. (internal quotation marks omitted). “The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.” Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997).
After examining the overall statutory scheme of the Code, the case law, and § 6501(c)(l)’s historical roots, we conclude that § 6501(c)(1) suspends the three-year limitations period only when the IRS establishes that the taxpayer acted with the intent to evade tax. Because the Government concedes that it cannot show that either the partnership or any of its partners acted with the intent to evade tax, *1343 summary judgment in favor of BASR was proper.
I
Section 6501(c)(1) provides that “[i]n the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed ... at any time.” On appeal, the Government contends that the unlimited limitations period is triggered whenever any individual acts with the intent to evade tax and the tax return ultimately filed contains a falsity, without regard to how remotely related that individual is to the actual tax return or to whether the taxpayer appreciates that individual’s intentions. BASR counters that the Claims Court correctly concluded that § 6501(e)(l)’s suspension of the statute of limitations is triggered only when the taxpayer acts with intent to evade tax,[4] and that the statutory scheme and history compel this conclusion.
We recognize that Section 6501(c)(1) is silent as to which party or parties must have the requisite fraudulent intent to suspend the three-year statute of limitations for pursuing a past underpayment. But that silence alone does not automatically compel the conclusion that Congress intended that actions by parties other than the taxpayer could suspend the three year statute of limitations. The government’s argument that we should simply focus on the fraudulent nature “of the return,” misses the mark. A fraud is only committed via submission of a document when a person acting with an intent to defraud makes a false entry on that document. The reference to a fraudulent return in § 6501(c) must be understood in context— by reference to the intent to evade tax language in that same statutory section. It is to interpreting that language which we must turn.
Under Supreme Court precedent, we cannot determine the meaning of the statutory language without examining that language in light of its place in the statutory scheme. Indeed, the Supreme Court recently emphasized the importance of looking at the statutory context when determining whether a statutory provision has a plain and unambiguous meaning. Yates v. United States, — U.S. —, 135 S.Ct. 1074, 1081-82, 191 L.Ed.2d 64 (2015) (“Whether a statutory term is unambiguous, however, does not turn solely on dictionary definitions of its component words. Rather, ‘[t]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole.’ ” (quoting Robinson v. Shell Oil Co., 519 U.S. at 341, 117 S.Ct. 843)); see also Barnhart, 534 U.S. at 450, 122 S.Ct. 941 (acknowledging that the inquiry into the plain meaning of a statute ceases only after determining that this meaning is “coherent and consistent” with the statutory scheme).
*1344 The other provisions in the Code relating to fraudulent conduct strongly suggest that the Code confines the “intent to evade tax” inquiry to the taxpayer’s intent. The precursor statute to § 6501(c)(1), in particular, confirms this understanding. These sources lead us to conclude that the reading of § 6501(c)(1) most “coherent and consistent” with the statutory scheme is one that limits the application of this provision to cases involving a false or fraudulent return where the taxpayer acted with the intent to evade tax.[5]
A
Section 6501(c)(1) is not the only Code provision that deals with the consequences of intentional tax evasion. A survey of other fraud-related provisions of the Code reveals that they contemplate fraud by the taxpayer, as opposed to by a person who merely contributed, albeit in a fraudulent way, to the filing of an inaccurate tax return.
1
Ordinarily, the IRS’s tax assessments are presumed correct, and the taxpayer has the burden of challenging this determination. United States v. Fior D’Italia, Inc., 536 U.S. 238, 242, 122 S.Ct. 2117, 153 L.Ed.2d 280 (2002). When alleging taxpayer fraud, however, the IRS bears the burden. I.R.C. 7454(a). Section 7454(a) provides that “[i]n any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax,” the IRS bears the burden of proving the element of fraud. Id. (emphasis added); see Badaracco, 464 U.S. at 399, 104 S.Ct. 756. Thus § 7454(a) indicates that, when pursuing fraudulent conduct, Congress considered the fraudulent intent of only the taxpayer, not of a third-party who advised or assisted the taxpayer. Section 7454(a) specifically identifies the “petitioner’s,” or taxpayer’s fraud and, by its plain terms, neither this provision nor the other fraud-related Code provisions discussed below countenance fraud committed by a third party that infected the taxpayer’s return.
The dissent suggests that § 7454(a)’s express reference to “the petitioner” indicates that Congress knew how to limit the referenced intent to that of the taxpayer. Dissenting Op. 1352. The dissent attempts to further diminish the import of this statute by relying on an isolated sentence in the legislative history of this provision. Id. True enough, the legislative history explains that Congress shifted the burden of proving fraud from the taxpayer to the IRS in recognition of the “penal” nature of proceedings involving allegations of fraud. Id. (citing S.Rep. No. 70-960, at 38 (1928)). The legislative history continues, however, by specifying that “the commissioner should be placed in the position of party plaintiff and compelled to carry the burden of proving fraud whenever it is an issue in the case.” S.Rep. No. 70-960, at 38 (emphasis added). When read together with the statute’s reference to the petitioner’s intent to evade tax, the Senate Report *1345 reinforces the conclusion that, “whenever [fraud] is an issue in the case,” it was fraud by the taxpayer, not by anyone else, that Congress sought to police. Furthermore, Congress intended for the government to always carry the burden of proof for any fraud allegation.
Taken to its logical conclusion, the dissent’s interpretation, and that of the Government, would allow the IRS to shift back its statutory burden of proof — and force the taxpayer to disprove fraud — whenever the IRS alleges that a party other than the taxpayer committed fraud. Not only would that create an illogical, party-specific divergence when it comes to burdens of proof for fraud, the outcome would directly conflict with the above-referenced congressional intent. See also Revenue Act of 1928: Hearing on H.R. 1 Before the S. Comm. On Finance, 70th Cong. 25 (1928) (testimony of Hugh Satterlee, Chairman, American Bar Association Committee on Federal Taxation) (criticizing how fraud allegations were handled, at that time because “there ha[d] been cases ... where in order to avoid a running of the statute of limitations the commissioner charged fraud without a scintilla of evidence,” placing taxpayers in the difficult position of having to disprove the fraud charged against them).
2
Our conclusion is further supported by the Government’s interpretation of another fraud-related Code provision, I.R.C. § 6668(a), which requires the IRS to impose fraud penalties. Section 6663(a) provides that “[i]f any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud.” I.R.C. § 6663(a) (emphasis added). Like § 6501(c)(1), § 6663(a) does not specify whether the “fraud” that triggers the statutory remedy (§ 6501(c)(1): suspension of the statute of limitations; § 6663(a): 75 percent penalty) must be attributable to the taxpayer. Instead, in both provisions a form of the word “fraud” describes the tax return, rather than a person (§ 6501(c)(1): “fraudulent”; § 6663(a): “due to fraud”).
Despite the similarities between § 6501(c)(1) and § 6663(a), the Government contends that § 6663(a)’s fraud penalty applies only when the taxpayer, not a third party, commits fraud.[6] Appellant’s Br. 48^49 (“[T]he 75-percent fraud penalty under I.R.C. § 6663 is intended to punish and deter wrongful conduct and should therefore be imposed on the taxpayer only if the taxpayer is culpable.” (citation and internal quotation marks omitted)). Yet, nothing in the statute or legislative history supports a result in which the IRS interprets § 6663(a), on the one hand, to allow it to penalize the taxpayer only for his own fraud, but interprets § 6501(c)(1), on the other hand, to prolong the IRS’s ability to penalize the taxpayer for fraud committed by others. We see no basis in the statutory language or legislative history of the two provisions to support the Government’s conflicting interpretations of who may be^ the source of the fraud that triggers these provisions.
*1346 3
Finally, the Government’s broad interpretation of § 6501(c)(1), if applied to other code provisions, could have unintended and unfortunate consequences. For example, it could prevent taxpayers from receiving an extension for payment of a tax deficiency under I.R.C. § 6161(b)(3). Section 6161 prohibits the IRS from granting an extension when the tax deficiency in question is “due to negligence, to intentional disregard of rules and regulations, or to fraud with intent to evade tax.” Like the other statutory provisions discussed above, § 6161 does not expressly specify whether a third-party’s negligent or fraudulent conduct would prevent the taxpayer from receiving an extension. If the Government prevails in its view that § 6501(c)(1) permits the IRS to look beyond the taxpayer for the requisite intent, the same would surely apply under § 6161.
B
To support its interpretation, the Government urges us to follow the lead of the Tax Court and the Second Circuit. According to the Government, each of these courts has previously decided that the fraud of a third-party may trigger the unlimited assessment period of § 6501(c)(1). Neither of the cases helps the Government’s case. As discussed further below, we do not find the reasoning of the Tax Court persuasive and, contrary to the Government’s assertion, the Second Circuit has not actually decided this issue.
1
In the Tax Court case, Allen v. Commissioner, the IRS sought to invoke § 6501(c)(l)’s unlimited limitations period to assess tax on a tax return where the tax preparer claimed false and fraudulent deductions, unbeknownst to the taxpayer. 128 T.C. 37, 38 (2007). After conducting a limited analysis of the text of § 6501(c)(1), the Tax Court concluded that a tax preparer could supply the necessary intent to evade tax. Id. at 42. The Tax Court’s reasoning parallels the arguments presented by the Government in the present case, none of which alters our conclusion. As previously noted, we do not read the Supreme Court’s statements in Badaracco as requiring us to adopt the Government’s interpretation of the statute of limitations here. See id. at 40.
In addition, although the Tax Court recognized how this interpretation would affect the application of the fraud penalty provision in § 6663(a), the court’s analysis did not consider how its interpretation conflicted with the IRS’s interpretations of Code provisions § 7454(a) and § 6161, discussed above. See id. at 41. Ultimately, the Tax Court seemed assuaged by the fact that its interpretation of the statute would have no practical effect, as the IRS was not actually seeking the fraud penalty in that case. Id.; see also id. at 42 (“We finally note that respondent is seeking to collect only the deficiency in tax from petitioner. Respondent is not asserting the fraud penalty against petitioner.”).
We are not so comforted. True enough, the Government now asserts that the fraud penalty should be “imposed on the taxpayer only if the taxpayer is culpable.” Appellant’s Br. 49. Nevertheless, if we accept the Government’s interpretation of § 6501(c)(1), the Government would be free to use that holding to impose the fraud penalty on taxpayers based on attenuated third-parties alleged to have the requisite fraudulent intent. In fact, § 6663(a)’s “shall” language apparently re *1347 quires the Government to pursue the fraud penalty in this situation. See I.R.C. § 6663(a) (“If any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud.” (emphasis added)).
Finally, finding that it was not “unduly burdensome for taxpayers to review their returns for items that are obviously false or incorrect,” the Tax Court rejected the taxpayer’s argument that using the tax preparer’s fraud to suspend the limitations period under § 6501(c)(1) would unfairly burden the taxpayer. Id. at 41 (emphasis added). In this case, however, that reasoning does not apply. BASR, the taxpayer that signed the return, had a third-party accountant who prepared the return and yet another step removed from Mayer, the lawyer who structured the fraudulent tax vehicle. There are no allegations that BASR, or even its accountant, knew or should have known that the tax return was false or incorrect, much less that it was “obviously” false or incorrect. Even if we were to find the Allen court’s reasoning persuasive, that decision would be distinguishable on the facts.
For these reasons, the Tax Court’s reasoning in Allen does not persuade us that § 6501(c)(1) necessarily encompasses situations where an attorney advising on financial transactions, but not involved with the preparation of the taxpayer’s return, acts with intent to evade tax.
2
The Government’s reliance on City Wide Transit, Inc. v. Commissioner is also misplaced. In that case, City Wide, the taxpayer, “eoncede[d] that ... City Wide’s returns trigger the tolling provision if we find that [the tax return preparer] filed them with the intent to evade City Wide’s taxes.”). 709 F.3d 102, 107 (2d Cir.2013). Thus, in City Wide, the Second Circuit confronted only the issue of whether the person who prepared the tax returns acted with the intent to evade taxes.
In front of the tax court, City Wide argued that it was not hable for the returns [the tax return preparer] prepared where ‘(1) [City Wide] did not know of the preparer’s defalcations; [and] (2) [City Wide] did not sign or knowingly allow to be filed a false return .... ’ The Commissioner anticipated these claims on appeal and rebutted them in its opening brief. City Wide, however, conceded these issues in its response brief. Moreover, each member of this panel asked City Wide whether it had intended this concession, and City Wide responded affirmatively to each of us in turn. Accordingly, we accept this concession without deciding whether certain factual situations might arise that sever the tax payer’s liability from. the tax-preparer’s wrongdoing.
City Wide, 709 F.3d at 107 n. 3 (citations omitted). Contrary to the Government’s assertions, City Wide did not actually address the question of whether the tax preparer’s intent was sufficient to trigger § 6501(c)(1). Id. at 107. Accordingly, City Wide has no bearing on the interpretation of § 6501(c)(1).
II
Based on the statutory scheme and the absence of persuasive case law, we cannot agree with the Government that § 6501(c)(1) unambiguously permits the suspension of the limitations period when *1348 the taxpayer lacked fraudulent intent. The statutory scheme actually seems to point in the opposite direction.
It is also worth noting that the Government’s interpretation is of relatively recent vintage. The IRS previously held the exact opposite position on the scope of § 6501(c)(1) than the one it asserts in the present case. Namely, in a 2001 Field Service Advisory, the IRS concluded that, although “[s]ection 6501(c)(1) does not by its express language require that the ‘intent to evade tax’ be the personal intent of Taxpayer[,] [w]e nonetheless conclude that the fraudulent intent of the return preparer is insufficient to make section 6501(c)(1) applicable.” Field Service Mem. 200104006, 2001 WL 63261. The IRS obviously changed its position on the interpretation of § 6501(e)(1) at some point between 2001 and 2005, when the IRS issued the deficiency notices that led to the Allen litigation. It is unclear what prompted this change in the IRS’s position, given that Congress had not altered the text of § 6501(c)(1) in any meaningful way over the past century. See Revenue Act of 1921 § 250(d), Pub.L. No. 67-98, 42 Stat. 227; see also Internal Revenue Code of 1954 § 6501(c)(1), Pub.L. No. 83-591, 68A Stat. 803.
Indeed, reviewing the evolution of § 6501 from its origin as § 250(d) of the Revenue Act of 1918 is instructive on understanding the proper interpretation. The context provided by this predecessor statute confirms that Congress intended that only the taxpayer’s intent to evade tax could trigger the unlimited limitations period that now appears in § 6501(c)(1). See Morrison-Knudsen Const Co. v. Dir., Office of Workers’ Comp. Programs, 461 U.S. 624, 632-33, 103 S.Ct. 2045, 76 L.Ed.2d 194 (1983) (examining the history and structure of the Compensation Act to aid in interpretation of a single statutory provision).
The fraud penalty and the fraud suspension of the statute of limitations appeared together in § 250 of the Revenue Act of 1918. First, § 250(b) imposed certain penalties for underpayment when the underpayment resulted from the taxpayer’s negligence or intent to evade tax.
(b) As soon as practicable after the return is filed, the Commissioner shall examine it....
If the amount already paid is less than that which should have been paid, the difference shall ... be paid upon notice and demand by the collector. In such case if the return is made in good faith and the understatement of the amount in the return is not due to any fault of the taxpayer, there shall be no penalty because of such understatement. If the understatement is due to negligence on the part of the taxpayer, but without intent to defraud, there shall be added as part of the tax 5 per centum of the total amount of the deficiency....
If the understatement is false or fraudulent with intent to evade the tax, then ... there shall be added as part of the tax 50 per centum of the amount of the deficiency....
Revenue Act of 1918 § 250(b), Pub.L. No. 54-254, 40 Stat. 1057 (emphases added).
Section 250(b) explains that the IRS will impose certain penalties when an underpayment is due to fault of the taxpayer. For example, under § 250(b) the IRS could not impose any penalty when an underpayment was “not due to any fault of the taxpayer.” If, however, the understatement was “due to negligence on the part of the taxpayer, but without intent to *1349 defraud,” the statute imposed a penalty equal to five percent of the underpayment. Then, the final paragraph of § 250(b) expands on the situations involving “intent to defraud” and explains that “[i]f the understatement [was] false or fraudulent with intent to evade the tax,” the IRS shall impose a penalty equal to fifty percent of the underpayment. In this way, the structure of § 250(b) and its use of “on the part of the taxpayer,” demonstrates that the determination of whether and to what extent a taxpayer would be penalized for underpayment is based on the taxpayer’s intent. The Government agrees that the fraud penalty provision in § 250(b) focuses solely on the taxpayer’s own intent. See Oral Argument at 27:52-28:11 available at http://oralarguments.cafc.uscourts.gov/ default.aspx?fl=2014-5037.mp3 (“In subsection (b), Congress made it perfectly clear that they were talking about taxpayer’s intent.”).
Two subsections later, § 250(d) borrows the “false or fraudulent with intent to evade tax” language from § 250(b) and uses it to describe situations when the normal period for assessing tax may be extended indefinitely.
(d) Except in the case of false or fraudulent returns with intent to evade the tax, the amount of tax due under any return shall be determined and assessed by the Commissioner within five years after the return was due or was made, and no suit or proceeding for the collection of any tax shall be begun after the expiration of five years after the date when the return was due or was made. In the case of such false or fraudulent returns, the amount of tax due may be determined at any time after the return is filed, and the tax may be collected at any time after it becomes due.
Revenue Act of 1918 § 250(d).
Although § 250(d) does not expressly identify whose “intent to evade the tax” could be used to extend the limitations period, the mirroring language in § 250(b), which is directed to the taxpayer’s intent, informs the interpretation of § 250(d). See Morrison-Knudsen, 461 U.S. at 633, 103 S.Ct. 2045 (“[W]e have often stated that a word is presumed to have the same meaning in all subsections of the same statute.... ”). With this in mind, it becomes abundantly clear that the focal point of § 250 is the intent of the taxpayer. The taxpayer’s intent is central to determining whether to impose a penalty and whether the IRS may avail itself of an unlimited period to assess tax. As with § 6501(c)(1) and § 6663(a), discussed supra, the Government fails to explain why § 250(b) and § 250(d) should be understood differently.
Since 1918, the concepts within § 250 were separated and recodified into three statutory sections. See I.R.C. §§ 6663(a), 6664(c), 6501. However, nothing in the recodification and reorganization process altered the meaning of the terms “intent” and “fraudulent” as used in this predecessor statute. Section 6501(c)(1) maintains the same “false or fraudulent return with the intent to evade tax” language that § 250(d) originally used, as informed by § 250(b). The Government has not pointed to any statutory text or legislative history of any of the subsequent reenactments that justifies expanding beyond the taxpayer the universe of parties who can supply the requisite intent to evade tax to trigger § 6501(c)(1).[7]
This statutory history of § 6501(c)(1) confirms and further supports *1350 the interpretation that limits to the taxpayer the fraudulent intent required to trigger suspending the three year statute of limitations. See Taniguchi v. Kan Pac. Saipan, Ltd., — U.S. —, 132 S.Ct. 1997, 2004-05, 182 L.Ed.2d 903 (2012) (examining the “statutory context” and the statute “[a]s originally enacted” to construe a statutory term).
Both parties identify policy reasons for and against limiting the application of § 6501(c)(1) to cases involving fraudulent conduct by the taxpayer, as opposed to other parties that may have a role in a fraudulent tax return. These policy arguments are best directed to Congress, which has the power to amend and update the Code to account for situations that may not have existed a century ago.[8]
Conclusion
The language, structure, and history of the Code leads us to the conclusion that the Claims Court properly interpreted § 6501(c)(1) as limiting the IRS to the three-year limitations period unless the taxpayer possessed the intent to evade tax.
AFFIRMED

. Section 6229 governs the limitations period for making assessments attributable to partnership items. This statute includes a provision that suspends the three-year limitations period when a partner acts with the intent to evade tax. I.R.C. § 6229(c)(1). BASR argued that § 6229(c)(1) supplants § 6501(c)(1), as the statute that the IRS must use to avail itself of the unlimited limitations period. According to BASR, the Government could not prove that a partner acted with intent to evade tax and therefore the FPAA was untimely because the IRS could not avail itself of an unlimited assessment period. The Claims Court rejected this argument as soundly foreclosed by our case law. We agree that § 6229(c)(1) does not supplant § 6501(c)(1) in a partnership case. See AD Global Fund, LLC ex rel. N. Hills Holding, Inc. v. United States, 481 F.3d 1351 (Fed.Cir.2007); Prati v. United States, 603 F.3d 1301, 1307 (Fed.Cir.2010) ("Sections 6501 and 6229 do not operate independently to allow a taxpayer to assert one in isolation and thereby render an otherwise timely assessment untimely.”); see also Rhone-Poulenc Surfactants & Specialties, L.P. v. Comm'r, 114 T.C. 533, 540-41 (2000) (“[SJectións 6229 and 6501 contain alternative periods within which to assess tax with respect to partnership items, with the later-expiring period governing in a particular case.”).

. On October 19, 2010, Mayer pleaded guilty to conspiracy and tax evasion charges relating to his design and implementation of numerous fraudulent tax shelters. United States v. Daugerdas, et al., No. 1:09-cr-00581 (S.D.N.Y. Oct. 19, 2010). As part of the guilty plea proceedings, Mayer admitted that he knew that these tax shelters would not be allowed by the IRS if scrutinized because the transactions had no genuine, non-tax business reasons and had no reasonable possibility of resulting in profit. By filing a declaration in the present proceedings, Mayer continues to *1342 maintain that he acted with the intent “to fraudulently evade the federal income tax [that the Pettinatis] would otherwise owe on capital gains from the sale of their business.” J.A. 946.

. Importantly, we need not decide whether the term "taxpayer,” as used in § 6501(c)(1), can be interpreted to encompass the actions of a taxpayer's authorized agents. The government does not allege — nor under the undisputed facts could it allege — that Mayer acted as an authorized agent of BASR or the Pettinatis in connection with the filing of the tax returns at issue here. The government simply argues that the "intent to evade tax” referenced in § 6501(c)(1) can be untethered to the filing of the return itself — i.e., can be the intent of someone proffering investment advice, but not making decisions regarding or making representations on the tax returns themselves. Because we reject that broad reading of § 6501(c)(1), we need not decide whether the intent of some other third party— one more closely connected to the tax preparation and filings themselves — might be relevant. But see Loving v. IRS, 742 F.3d 1013, 1017 (D.C.Cir.2014) ("Put simply, tax — return preparers are not agents. They do not possess legal authority to act on the taxpayer’s behalf. They cannot legally bind the taxpayer by acting on the taxpayer's behalf.”).

. In reaching its decision, the Claims Court noted that § 6501(a) defines the term “return” as “the return required to be filed by the taxpayer.” The Claims Court then incorporated this definition into § 6501(c)(1) and thereby concluded that the statutory language limited the suspension to cases where the taxpayer possesses fraudulent intent. BASR P’ship, 113 Fed.Cl. at 192 ("Because the language of 6501(a) is expressly limited to a return filed by the 'taxpayer,' the fraudulent intent referenced in I.R.C. § 6501(c) is by implication limited to fraud by the taxpayer.”). Although we disagree that this definition renders the meaning of § 6501(c)(1) clear and unambiguous, the inquiry into the plain meaning of this statute does not end here.

. The Government also stresses the Supreme Court’s recognition, in Badaracco v. Commissioner, that " ‘[sjtatutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government.’ ” 464 U.S. 386, 391, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984) (quoting E.I. DuPont De Nemours & Co. v. Davis, 264 U.S. 456, 462, 44 S.Ct. 364, 68 L.Ed. 788 (1924)). In contrast to the present case, there was no indication in Badaracco that the Court's interpretation was inconsistent or incoherent in the greater statutory scheme.

. The Government also argues that § 6663(a)'s fraud penalty is discretionary, and therefore the Government will not assess a penalty against an innocent taxpayer when it was a third party that caused the return to be fraudulent. That argument appears foreclosed by the language of § 6663(a), which states that the penalty “shall be added” in cases of fraud.

. In Allen, the Tax Court briefly mentioned § 6501's origin in the Revenue Act of 1918, *1350 but rejected its probative value based on a statutory amendment passed by the House Ways and Means Committee, which was ultimately rejected by the Senate Finance Committee. Allen v. Comm’r, 128 T.C. at 39 n. 3. True enough, this amendment would have specified that the unlimited assessment period was triggered only by the taxpayer’s intent to evade tax. Id. But, “failed legislative proposals are a particularly dangerous ground on which to rest an interpretation of a prior statute.” Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 187, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) (internal quotation marks and citation omitted). This is especially true where, as in the case of § 250(d), the legislature discards a proposed amendment without discussion. See Allen, 128 T.C. at 39 n. 3. "Congressional inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction, including the inference that the existing legislation already incorporated the offered change.” Cent. Bank of Denver, 511 U.S. at 187, 114 S.Ct. 1439 (emphasis added) (citation omitted).

. To the extent the dissent is concerned with removing a tool from the IRS’s toolbox, however, we note that there are many ways the IRS can recoup tax underpayments from third parties who intentionally violate the law or encourage others to do so, not the least of which is through the criminal prosecution— with attendant restitution orders — of such persons. We note, moreover, that the IRS's need to resort to the strained statutory interpretation it urges upon us was due in large measure to its own delays and failure to act despite full disclosure of all information necessary to assess the legitimacy of the transactions reported. Indeed, the government concedes that it took the IRS twenty-seven months from the date that Jenkens & Gilchrist disclosed its list of tax shelter clients (which included the Pettinatis) to the date it initiated an audit of BASR's returns. See Appellant Br. 23 (citing J.A. 1703-04; J.A. 202). And, the Tax Court has expressly found that a tax return like the Pettinatis was sufficient on its face to disclose all relevant aspects of the transactions about which the IRS now complains. See R & J Partners v. Comm’r, No. 7166-06, 2009 U.S. Tax Ct. LEXIS 45, at *4-5 (Tax Ct. Oct. 23, 2009).