# United States Tax Court

T.C. Memo. 2024-10

STEPHANIE MURRIN,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

_____

Docket No. 14614-19.                              Filed January 24, 2024.

_____

*Lawrence A. Sannicandro*, *Daniela Calabro*, and *Michael A. Guariglia*, for petitioner.

*Michael S. Rapiejko*, *Brian J. Bilheimer*, and *Michael J. De Matos*, for respondent.

## MEMORANDUM OPINION

URDA, *Judge*: The Internal Revenue Service (IRS) generally has three years from the filing of a federal income tax return to assess tax. This temporal limit disappears, however, when the IRS is faced with "a false or fraudulent return with the intent to evade tax." I.R.C. § 6501(c).[1] In 2019 the IRS issued a notice of deficiency to petitioner, Stephanie Murrin, with respect to returns she and her then husband had filed, many years earlier, for their 1993–99 tax years. Although the Murrins did not intend to evade tax, their tax return preparer did, and, to that end, he put false or fraudulent information on the Murrins' returns.

_____

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary values to the nearest dollar.

**[\*2]**   The sole question before the Court is the same one we decided in *Allen v. Commissioner*, 128 T.C. 37 (2007): whether section 6501(c) applies only where a taxpayer herself has filed a false or fraudulent return with the intent to evade tax.  The Code contains no such limitation, and we will adhere to our precedent.

## Background

The parties submitted this case for decision without trial under Rule 122 and have stipulated all material facts.  Ms. Murrin lived in New Jersey when she timely filed her petition.

For tax years 1993 through 1999 (the years at issue), the Murrins relied on a tax return preparer, Duane Howell, to prepare their joint federal income tax returns, as well as returns for two partnerships in which Ms. Murrin was a general partner.  Unbeknownst to the Murrins, Mr. Howell placed false or fraudulent entries on those returns with the intent to evade tax.  The Murrins themselves did not put any false or fraudulent information on their returns, nor did they intend to evade tax.

The Murrins timely filed their 1993–99 tax returns.  The IRS did not discover Mr. Howell's fraudulent entries until well after the expiration of the three-year period of limitations to assess tax set forth in section 6501(a).  In 2019 the IRS nonetheless issued a notice of deficiency to the Murrins for the years at issue, premised on the fraud exception to the three-year limitation embodied in section 6501(c).  The notice determined deficiencies and accuracy-related penalties under section 6662 against the Murrins for all of the years in issue.

## Discussion

### I.   *Burden of Proof*

The parties submitted this case for decision without trial under Rule 122(a).  The fact that a case has been submitted under Rule 122(a) "does not alter the burden of proof, or the requirements otherwise applicable with respect to adducing proof, or the effect of failure of proof."  Rule 122(b).

In this case the Commissioner bears the burden of proof under Rule 142(b), which places the burden on him "[i]n any case involving the issue of fraud with intent to evade tax."  The placement of the burden has no practical effect here, however.  The parties have stipulated that

**[*3]** Mr. Howell committed fraud with the intent to evade tax, and our resolution thus turns not on the proof before us but on the scope of section 6501(c).

II.    *Limitation on Assessment*

A.    *Introduction*

Section 6501(a) generally provides that "the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed." Section 6501(c) lays out several exceptions to this general limitation, including "[i]n the case of a false or fraudulent return with the intent to evade tax." I.R.C. § 6501(c)(1). In that instance "the tax may be assessed . . . at any time." *Id.* We have previously held in a precedential opinion that the section 6501(c)(1) exception to the statute of limitation encompasses the case where a tax return preparer prepares a false or fraudulent return with the intent to evade tax. *Allen*, 128 T.C. at 42; *see also Finnegan v. Commissioner*, T.C. Memo. 2016-118, *aff'd*, 926 F.3d 1261 (11th Cir. 2019);[2] *Ames-Mechelke v. Commissioner*, T.C. Memo. 2013-176, at *14; *Eriksen v. Commissioner*, T.C. Memo. 2012-194, 2012 WL 2865875, at *7; *Browning v. Commissioner*, T.C. Memo. 2011-261, 2011 WL 5289636, at *13 n.14; *cf. City Wide Transit, Inc. v. Commissioner*, 709 F.3d 102, 107–08 (2d Cir. 2013), *rev'g on other grounds* T.C. Memo. 2011-279, 2011 WL 5884981.

Ms. Murrin argues that *Allen* was wrongly decided and asks us to reconsider our decision and hold in the alternative that section 6501(c) encompasses solely taxpayer fraud. As an initial matter, the doctrine of stare decisis counsels us to "follow the holding of a previously decided case, absent special justification." *Sec. State Bank v. Commissioner*, 111 T.C. 210, 213 (1998), *aff'd*, 214 F.3d 1254 (10th Cir. 2000). Stare decisis "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Hesselink v. Commissioner*, 97 T.C. 94, 99 (1991) (quoting *Payne v. Tennessee*, 501 U.S. 808, 827 (1991)).

In cases of statutory construction, stare decisis has "'special force,' for 'Congress remains free to alter what [courts] have done.'" *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 139 (2008) (quoting

---

[2] The U.S. Court of Appeals for the Eleventh Circuit decided that appellants in *Finnegan* had waived their challenge to *Allen* and declined to exercise its discretion to consider that argument. *Finnegan v. Commissioner*, 926 F.3d at 1270.

[*4] *Patterson v. McLean Credit Union*, 491 U.S. 164, 172–73 (1989)). This generally obviates our need to revisit or repeat the statutory analysis that led us to a prior decision, absent special justification. *See Midland Fin. Co. & Subs. v. Commissioner*, T.C. Memo. 2001-203, 2001 WL 868626, at *3.

Ms. Murrin counters that this case features the type of special justification that supports revisiting precedent, namely a decision of the U.S. Court of Appeals for the Federal Circuit disagreeing with our holding in *Allen*. *See BASR P'ship v. United States*, 795 F.3d 1338, 1342 (Fed. Cir. 2015). We have previously declined to revisit our precedent in light of the Federal Circuit's opinion, noting that each of the judges on the panel wrote separately and that "it is unclear . . . which interpretation of sect[ion] 6501(c)(1) would prevail." *Finnegan*, T.C. Memo. 2016-118, at *18 n.6. Laying out the scorecard: (1) the author of the majority opinion concluded that section 6501(c)(1) "suspends the three-year limitations period only when the IRS establishes that the *taxpayer* acted with the intent to evade tax," *BASR*, 795 F.3d at 1342; (2) the author of the concurring opinion reasoned that "it is the taxpayer (or possibly his authorized agent) who must have the requisite 'intent to evade tax,'" *id.* at 1351 (O'Malley, J., concurring); and (3) the author of the dissenting opinion agreed with our holding in *Allen*, *id.* at 1357–61 (Prost, C.J., dissenting).

The Federal Circuit's position on the precise point before us is not clear. We further note that "there is no jurisdiction for appeal of any decision of the Tax Court to the [Federal Circuit]" in any event. *Finnegan*, T.C. Memo. 2016-118, at *18 n.6; *see* I.R.C. § 7482(a)(1). Stare decisis principles thus would seem to weigh against our reconsideration of our precedent in light of *BASR*.[3]

B. *Analysis*

Even if we were to conclude that stare decisis weighed in favor of reconsideration of *Allen*, we would reach the same result. As an initial matter, "limitations statutes barring the collection of taxes otherwise due and unpaid are strictly construed in favor of the Government."

---

[3] Ms. Murrin suggests on reply that the Commissioner bears the burden of persuading the Court that *Allen* should be followed. To the contrary, "every successful proponent of overruling precedent has borne the heavy burden of persuading the Court that changes in society or in the law dictate that the values served by *stare decisis* yield in favor of a greater objective." *Vasquez v. Hillery*, 474 U.S. 254, 266 (1986); *AHG Invs., LLC v. Commissioner*, 140 T.C. 73, 83 (2013).

**[\*5]** *Badaracco v. Commissioner*, 464 U.S. 386, 392 (1984) (quoting *Lucia v. United States*, 474 F.2d 565, 570 (5th Cir. 1973)) (addressing I.R.C. § 6501(c)(1)).[4] "Our task is to give effect to the will of Congress, and where Congress's will has been expressed in language that has a reasonably plain meaning, that language must ordinarily be regarded as conclusive." *Byrd v. Shannon*, 715 F.3d 117, 122 (3d Cir. 2013); *see also United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). We will discuss each aspect in turn.

1.    *Section 6501(c)(1)*

Our analysis begins, as always, with the text of the relevant statutory provision. *Ross v. Blake*, 578 U.S. 632, 638 (2016); *see also Doe I v. Scalia*, 58 F.4th 708, 715 (3d Cir. 2023); *Lawrence v. City of Phila.*, 527 F.3d 299, 316–17 (3d Cir. 2008). Section 6501(c)(1) provides that "[i]n the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time."

By its own terms, this provision does not restrict its application to cases where taxpayers personally had the intent to evade tax. *See Allen*, 128 T.C. at 40 ("Nothing in the plain meaning of the statute suggests the limitations period is extended only in the case of the taxpayer's fraud."). Instead, Congress showed itself agnostic as to who had to have the intent to evade tax, choosing to "key[] the extension [of the limitation period] to the fraudulent nature of the return" rather than

---

[4] Ms. Murrin argues that the presumption of strict construction of collection limitation statutes should be limited to cases in which the taxpayer committed fraud, as was the case in *Badaracco*. The cases cited in *Badaracco* make clear that this presumption comes from "the established general rule [that] a statute of limitation runs against the United States only when they assent and *upon the conditions prescribed*." *Lucas v. Pilliod Lumber Co.*, 281 U.S. 245, 249 (1930) (emphasis added); *see also E. I. Du Pont de Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924) ("[A]n action on behalf of the United States in its governmental capacity . . . is subject to no time limitation, *in the absence of congressional enactment clearly imposing it*." (Emphasis added.)). The identity of the perpetrator of the fraud thus is irrelevant for the operation of the presumption. We likewise reject Ms. Murrin's assertion that this presumption does not operate in the context of an exception to a statute of limitation as the Supreme Court in *Badaracco* was interpreting section 6501(c)(1), the same provision at issue here.

**[\*6]** tie it to the taxpayer's intent. *Id.* "[T]he obvious construction of the statutory text is that the intent to evade tax must be present in a false or fraudulent return, irrespective of who possesses that intent." *BASR*, 795 F.3d at 1359 (Prost, C.J., dissenting).

The Supreme Court recently endorsed a similar interpretative path in the context of a Bankruptcy Code provision that featured an "actor off the stage." *Bartenwerfer v. Buckley*, 598 U.S. 69, 75 (2023). In that case, Congress wrote the relevant provision in the passive voice and thus, as here, did not specify a particular actor. *Id.* at 74–76. The Supreme Court explained that Congress had "framed [the provision at issue] to 'focu[s] on an event that occurs without respect to a specific actor, and therefore without respect to any actor's intent or culpability.'" *Id.* at 75–76 (quoting *Dean v. United States*, 556 U.S. 568, 572 (2009)). Section 6501(c)(1), which focuses on the return and not the intent of a particular actor, compels the same result here.

Ms. Murrin responds with a textual argument of her own. Noting that the text identifies the tax and return at issue as belonging to the taxpayer, she contends that the intent to evade must also come from the taxpayer. This conclusion does not follow. The specification of whose tax or return is at issue does not suggest, much less dictate, who had to intend to evade tax. *Cf. BASR*, 795 F.3d at 1343 n.4 (rejecting the argument that the definition of return "renders the meaning of § 6501(c)(1) clear and unambiguous").

In summary, section 6501(c)(1) applies "[i]n the case of a false or fraudulent return with the intent to evade tax," with no additional qualification. The provision contains no requirement that the intent to evade belong to the taxpayer, *see Bartenwerfer*, 598 U.S. at 75–76, and we will not import a restriction that Congress saw fit not to impose, *see, e.g., Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992).

### 2. *Broader Statutory Context*

Nor does the broader statutory context compel a different interpretation. Like the Federal Circuit, Ms. Murrin argues that certain other Code provisions related to fraud (sections 6663, 7454(a), and 6161(b)(3)) weigh in favor of attaching a taxpayer-specific limitation to the intent requirement of section 6501(c)(1). We disagree. These Code provisions "reveal[] only that Congress knows how to explicitly limit the intent to evade tax to the taxpayer," *BASR*, 795 F.3d at 1359 (Prost, C.J., dissenting), and chose not to do so here.

**[*7]**                    a.    *Section 6663*

We first consider section 6663(a), which imposes a penalty "[i]f any part of any underpayment of tax required to be shown on a return is due to fraud." That provision, like section 6501(c)(1), has its roots in the Revenue Act of 1918, ch. 18, 40 Stat. 1057, and contains no reference to the taxpayer. Ms. Murrin points out that the penalty nonetheless has been interpreted to encompass only fraud attributable to a particular taxpayer and concludes that a similar limitation should obtain here.

Section 6663(a) itself must be understood in the proper context, which demonstrates that it applies to a specific, culpable taxpayer. From its introduction in 1918, this penalty has been accompanied by a reasonable cause and good faith exception currently embodied in section 6664(c)(1), which provides that "[n]o penalty shall be imposed under section . . . 6663 . . . if it is shown that there was a reasonable cause . . . and that *the taxpayer acted in good faith*." (Emphasis added.) Evidence that the fraud penalty applies exclusively to taxpayer fraud is furthered by section 6663(c), which limits the penalty in cases of joint returns to those who actually committed fraud. Although section 6663(a) does not explicitly speak in taxpayer-specific terms, the statutory context elucidates that the penalty applies only to a particular taxpayer. Similar context fails to suggest that the exception to the statute of limitation in section 6501(c)(1) must be similarly limited.

This point is brought into starker relief when considering the history of these provisions. Section 250(b) of the Revenue Act of 1918, 40 Stat. at 1083, which housed the original version of the section 6663(a) fraud penalty, provides:

> If the amount already paid is less than that which should have been paid, the difference shall . . . be paid upon notice and demand . . . . In such case if the return is made in good faith and the understatement of the amount in the return is not due to any fault of the *taxpayer*, there shall be no penalty because of such understatement. If the understatement is due to negligence on *the part of the taxpayer*, but without intent to defraud, there shall be added as part of the tax 5 per centum of the total amount of the deficiency . . . .

> If the understatement is false or fraudulent with intent to evade the tax, then . . . there shall be added as

[*8]   part of the tax 50 per centum of the amount of the deficiency.

(Emphasis added.)  Although the fraud penalty portion of that section did not speak in terms of the culpability of a particular taxpayer, it did not need to: the provision as a whole made clear that the penalties and exceptions described therein applied to a particular taxpayer.

Section 250(d) of the Revenue Act of 1918, 40 Stat. at 1083, which embodied the first incarnation of section 6501(c)(1), contains no similar markers.  Worded almost identically to the current version, it simply provides that "[e]xcept in the case of false or fraudulent returns with intent to evade the tax, the amount of tax due under any return shall be determined and assessed by the Commissioner within five years."  Thus, nothing in the text of section 250(d) offers support for adding the requirement pellucid in section 250(b).[5]

Ms. Murrin suggests that these provisions, which were originally two houses down from each other in the Revenue Act of 1918, should be read in pari materia considering their placement and the common subject matter of fraud.  "The Supreme Court has recognized, however, that identical terms or phrases used in the Code need not be interpreted to have the same meaning where the sections in which they are found serve different legislative purposes."  *Yarish v. Commissioner*, 139 T.C. 290, 297 (2012) (citing *Don E. Williams Co. v. Commissioner*, 429 U.S. 569, 580–82 (1977)); *see also* 2B Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 51:3, at 222–28 (7th ed. 2012) ("Characterization of the object or purpose is more important than characterization of the subject matter to determine whether different statutes are closely enough related to justify interpreting one in light of the other.").  Although both section 6501(c)(1) and section 6663 deal with fraud, their purposes are vastly different and account for the different treatment.

The purpose of the former is to provide unlimited time to the Commissioner to assess the correct tax liability in the case of a false or fraudulent return "because of the special disadvantage to the Commissioner in investigating these types of returns."  *Allen*, 128 T.C. at 40; *see also Badaracco v. Commissioner*, 464 U.S. at 398; *BASR*, 795

---

[5] The parties joust over the meaning of a failed 1934 amendment, and a senator's description of that amendment in passing.  We attach no weight to their discussion given the plain text and the established history of this provision.  *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 187 (1994).

**[\*9]** F.3d at 1361 (Prost, C.J., dissenting); *City Wide Transit, Inc. v. Commissioner*, 709 F.3d at 107; *Ballard v. Commissioner*, 740 F.2d 659, 663 (8th Cir. 1984) ("The lifting of the normal statute of limitations addresses the difficulties which sometimes arise in the discovery of deficiencies by virtue of taxpayer fraud . . . ."), *aff'g in part, rev'g in part* T.C. Memo. 1982-466. Fraud—by whoever committed—places the tax collector in a "disadvantageous position" vis-à-vis the determination of a taxpayer's correct tax liability. *Badaracco v. Commissioner*, 464 U.S. at 398. "[F]raud cases ordinarily are more difficult to investigate than cases marked for routine tax audits. Where fraud has been practiced, there is a distinct possibility that the taxpayer's underlying records will have been falsified or even destroyed." *Id.* "Thus, the lack of a statute of limitations for fraudulent returns with intent to evade tax in § 6501(c)(1) (and § 250(d)) reasonably compensates the government for the unique difficulty involved in discovering fraud and determining the taxpayer's true tax liability." *BASR*, 795 F.3d at 1361 (Prost, C.J. dissenting).

Section 6663(a) serves a markedly different purpose, which is tied to the culpability of a particular taxpayer. "The fraud penalty is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from a taxpayer's fraud." *Bell Cap. Mgmt., Inc. v. Commissioner*, T.C. Memo. 2021-74, at \*18; *see Helvering v. Mitchell*, 303 U.S. 391, 401 (1938); *cf. Asphalt Indus., Inc. v. Commissioner*, 384 F.2d 229, 234–35 (3d Cir. 1967) (explaining that Congress intends section 6663(a) "to punish and deter wrongful conduct"), *rev'g* 46 T.C. 622 (1966). "Given that the taxpayer must pay any tax penalty, Congress may reasonably only intend to penalize the taxpayer when the taxpayer is culpable." *BASR*, 795 F.3d at 1360–61 (Prost, C.J. dissenting).

The broader statutory context reflects these divergent purposes, showing that the exception is tied to a false or fraudulent return with the intent to evade, not a particular person, while the penalty is taxpayer specific. The two statutes are not in pari materia, and the fraud penalty does not inform the reading of the exception.

b. *Section 7454(a)*

We are similarly unpersuaded by Ms. Murrin's contention that section 7454(a) justifies restricting section 6501(c)(1) to cases where taxpayers themselves intended to evade tax. Section 7454(a) provides

**[\*10]** that "[i]n any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Secretary."

According to Ms. Murrin, section 7454(a) "indicates that, when pursuing fraudulent conduct, Congress considered the fraudulent intent of only the taxpayer, not of a third party who advised or assisted the taxpayer." We draw a different conclusion. In section 7454(a) Congress's decision to explicitly limit the intent to evade tax to a taxpayer's own intent belies the notion that such a limitation attaches to other sections of the Code pertaining to fraudulent conduct or the intent to evade tax. "Without such express limitation, the intent to evade tax encompasses others who cause a return to be fraudulent." *BASR*, 795 F.3d at 1359 (Prost, C.J., dissenting).

The inclusion of this language carries another lesson. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Dean*, 556 U.S. at 573 (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). Section 7454(a) "demonstrates that Congress only limits the intent to evade tax to the taxpayer's intent in specific circumstances." *BASR*, 795 F.3d at 1359 (Prost, C.J., dissenting). It did not do so here, and absent more, we must respect Congress's decision.

Following the lead of the majority in *BASR*, Ms. Murrin attempts to save her argument by pointing to legislative history which states that "the [C]ommissioner should be placed in the position of party plaintiff and compelled to carry the burden of proving fraud whenever it is an issue in the case." S. Rep. No. 70-960, at 38 (1928), *as reprinted in* 1939-1 C.B. (Part 2) 409, 435–36; *see also BASR*, 795 F.3d at 1344. According to Ms. Murrin, this Senate report supports the conclusion that, "'whenever [fraud] is an issue in the case,' it was fraud by the taxpayer, not by anyone else, that Congress sought to police." *BASR*, 795 F.3d at 1345.

"But legislative history is not the law." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018). And we do not believe that resorting to legislative history is called for here given the unambiguous nature of the text of sections 7454(a) and 6501(c)(1). *See, e.g.*, *Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011).

**[\*11]**  Even if we were to consider the Senate report, it does not suggest that Congress thought that any reference to fraud carries with it the implicit limitation to a specific taxpayer.  The legislative history shows that Congress was responding to a particular problem seen in Board of Tax Appeals cases where the "deficiency letter raises the issue that the [taxpayer] has been guilty of fraud."  1939-1 C.B. (Part 2) at 435.  The legislative history observed that "[p]roceedings before the [Board of Tax Appeals] involving that issue in some respects resemble penal suits." *Id.* Congress responded to this specific problem by enacting section 7454(a). "This concern does not apply if another's alleged intent to evade tax is at issue," *BASR*, 795 F.3d at 1359 (Prost, C.J., dissenting), and the legislative history thus cannot carry the weight that Ms. Murrin seeks to put on it.

#### c.  *Section 6161(b)(3)*

We find unconvincing Ms. Murrin's argument that interpreting section 6501(c)(1) to mean what it says would undermine section 6161(b)(3).  That provision prohibits the IRS from granting an extension to pay a tax deficiency when it is "due to negligence, to intentional disregard of rules and regulations, or to fraud with intent to evade tax." I.R.C. § 6161(b)(3).  Ms. Murrin points out that unless "fraud with intent to evade tax" is restricted to a taxpayer's personal intent, "a taxpayer's eligibility for relief under section 6161(b) could be conditioned on the act of some third party."  As we explained when interpreting the same phrase in the context of section 6501(c)(1), *see supra* Part II.B.1., we simply have no grounds for reading in an additional, unstated restriction to qualify the wording Congress adopted.

#### 3.  *Remaining Arguments*

Ms. Murrin also asserts that the interpretation adopted by this Court in Allen is inconsistent with several decisions of this Court and other courts, which concluded that section 6501(c)(1) did not apply to third parties who were unrelated to the preparation and filing of the return. *See BASR*, 795 F.3d at 1347 ("There are no allegations that [the taxpayer], or even its accountant, knew or should have known that the tax return was false or incorrect . . . ."); *Asphalt Indus., Inc., v. Commissioner*, 384 F.2d at 230; *Botwinik Bros. of Mass., Inc. v. Commissioner*, 39 T.C. 988, 990–91 (1963); *see also City Wide Transit, Inc. v. Commissioner*, 709 F.3d at 108 (observing that the tax return preparer who intended to evade taxes "was not a third party unrelated to the preparation and filing of the returns").  These cases are inapposite

**[\*12]** as they do not address the applicability of section 6501(c)(1) to a person who filed or prepared false or fraudulent returns with the intent to evade tax, as did Mr. Howell, the Murrins' tax return preparer.[6]

Our interpretation nonetheless accommodates the results in each. Section 6501(c)(1) is triggered by (1) a false or fraudulent return (2) with the intent to evade tax. The combination of a return with the intent requirement circumscribes the pool of actors whose intent might matter to those who had a hand in the preparation or filing of a tax return. I.R.C. § 6501(c)(1); *accord BASR*, 795 F.3d at 1343 ("A fraud is only committed via submission of a document when a person acting with an intent to defraud makes a false entry on that document."). The decisions cited by Ms. Murrin each involved fraud perpetrated by third parties distant from the filing and preparation of the return, and thus section 6501(c)(1) did not apply. *See BASR*, 795 F.3d at 1343; *Asphalt Indus. v. Commissioner*, 384 F.2d at 230; *Botwinik*, 39 T.C. at 990–91.[7]

Finally, we are unpersuaded that the decision of the U.S. Court of Appeals for the Fifth Circuit in *Payne v. Commissioner*, 224 F.3d 415, 420–21 (5th Cir. 2000), *rev'g* T.C. Memo. 1998-227, has any relevance here, much less "[s]upports the [c]onclusion [t]hat [f]raudulent [i]ntent [i]s [d]etermined by [r]eference to the [t]axpayer's [i]ntent." In that case, the Fifth Circuit addressed whether evidence introduced by the Commissioner in the Tax Court sufficed to meet his burden of proof with respect to section 6501(c)(1). *Payne v. Commissioner*, 224 F.3d at 421. Although the Fifth Circuit's analysis centered on the taxpayer before it,

---

[6] Ms. Murrin attempts to manufacture a conflict between *Allen* and the opinion of the U.S. Court of Appeals for the D.C. Circuit in *Loving v. IRS*, 742 F.3d 1013, 1017 (D.C. Cir. 2014), suggesting that *Allen* conflicted with the D.C. Circuit's observation that "tax-return preparers are not agents." The conclusion in *Allen*, however, did not stem from agency principles, but from the plain text of the Code, and in no way implicates the D.C. Circuit's opinion. We likewise reject Ms. Murrin's reliance on *United States v. Boyle*, 469 U.S. 241 (1985). The fact that a taxpayer has a nondelegable duty to file a return does not support the conclusion that a taxpayer must intend to evade tax for section 6501(c)(1) to apply.

[7] Each of our post-*Allen* decisions has similarly involved the conduct and intent of the person or persons who actually prepared the false or fraudulent returns at issue. *See Finnegan*, T.C. Memo. 2016-118, at \*17–27 (applying the fraud exception in the case of tax-preparer fraud); *Ames-Mechelke*, T.C. Memo. 2013-176, at \*19–21 (same); *Eriksen v. Commissioner*, 2012 WL 2865825, at \*12 (same); *City Wide Transit, Inc. v. Commissioner*, 2011 WL 5884981, at \*6 (same); *Browning v. Commissioner*, 2011 WL 5289636, at \*16 (same).

**[\*13]** the court did not suggest that only a taxpayer's intent to evade can trigger section 6501(c)(1), a question plainly not before that court.[8]

III.  *Conclusion*

We have concluded that no special justification exists warranting our reversal of *Allen*.  Mr. Howell's preparation of false or fraudulent returns with the intent to evade tax is sufficient to trigger the indefinite period of limitation to assess tax.  The Commissioner's deficiency determinations are timely.

To reflect the foregoing,

*Decision will be entered for respondent.*

---

[8] In her reply brief, Ms. Murrin raises for the first time that certain IRS Field Service Advice Memoranda interpreting section 6501(c)(1) violated the Administrative Procedure Act (APA).  We generally deem issues raised for the first time on reply as waived or conceded.  *See, e.g.*, *Levert v. Commissioner*, T.C. Memo. 1989-333, 57 T.C.M. (CCH) 910, 917–18 (deeming an issue conceded when party did not raise it in his opening brief), *aff'd without published opinion*, 956 F.2d 264 (5th Cir. 1992); *cf. Thomas v. Roach*, 165 F.3d 137, 145–46 (2d Cir. 1999) (holding argument first raised in reply brief waived).  Even if we were to consider this issue, Ms. Murrin fails to show that such non-precedential Field Service Advice Memoranda constitute rulemaking under the APA.